UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew PASHA, Peter Grafner, and Arthur Monaco, Defendants-Appellants.

No. 14188.

United States Court of Appeals
Seventh Circuit.

May 22, 1964.

Rehearing Denied June 17, 1964.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., David P. Schippers, Asst. U. S. Atty., Chicago, Ill., David F. Long, Regional Counsel, Chicago, Ill., John Peter Lulinski, John Powers Crowley, James J. Casey, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Defendants Andrew Pasha, Peter Grafner, and Arthur Monaco were convicted by a jury on a two-count indictment, charging violations of section 7203 of the Internal Revenue Code of 1954.[1] Defendants received prison sentences and were fined. They appeal from the judgments of conviction.

*The Sufficiency of the Indictment.*

Both counts of the indictment charged that defendants were engaged in the business of accepting wagers from April 25, 1960 to April 27, 1960, and that they received wagers on their own behalf and on behalf of other persons engaged in the business. Count one charged defendants willfully failed to pay the special occupational tax on wagering for the taxable period ending June 30, 1960, as required by section 7203. Count two charged that defendants willfully failed to register with the Chicago district director of Internal Revenue and to file Internal Revenue Form 11–C, as required by law and regulations, in violation of section 7203.

1. 26 U.S.C. § 7203 reads in pertinent part: "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return * * * or supply any information, who willfully fails to pay such estimated tax or tax, make such return * * * or supply such information, at the time or times required by law or regulations, shall

Defendants contend that count one is insufficient because the names of the persons engaged in accepting wagers on whose behalf defendants acted were not named in the indictment.

Section 4401(c) of the Internal Revenue Code of 1954 requires the payment of a tax by one who is engaged in the business of accepting wagers. Section 4411 imposes a similar tax upon those who receive wagers for others whose business is the acceptance of wagers. Thus, an occupational tax is payable by one engaged in the wagering business whether he operates the business or acts as the agent for someone who does conduct the business. Here, defendants were charged both as principals and agents. There was no necessity to recite in the indictment the identity of the principals on whose behalf defendants were acting as agents because the gravamen of the offense is the engaging in the business of accepting wagers either as principal or agent.

Defendants contend that count two of the indictment failed to charge an offense defined by statute. They point out that the count charges a failure to register in accordance with section 4412(a) of the Internal Revenue Code of 1954 and also a failure to make a return on Form 11–C. They assert that the return is not required by statute. Defendants argue that the failure to file Form 11–C is not proscribed by section 7203 even though that section includes the failure to make a return "required by law or regulations."

Section 4412(a) provides that each person required to pay the occupational tax under sections 4401 and 4411 must register with the Internal Revenue Service. Section 4412(c) provides: "In accordance with regulations prescribed by the Secretary, he or his delegate may require from time to time such supplemental information from any person required to register under this section as may be needful to the enforcement of this chapter." Pursuant to section 4412(c), the Secretary of the Treasury promulgated regulation § 44.4412–1(a) which reads in part: "Every person required to pay the special tax imposed by section 4411 shall register and file a return on Form 11–C. For provisions relating to the general requirement for filing a return, see § 44.6011(a)–1." [2]

Even though the requirement for registering and filing a return on Form 11–C originates in a regulation, it is given statutory sanction not only by section 4412(c) but also by section 6011(a) of the Internal Revenue Code of 1954. That section reads in part:

"When required by regulations prescribed by the Secretary or his delegate any person made liable for any tax imposed by this title * * * shall make a return * * * according to the forms and regulations prescribed by the Secretary or his delegate."

It is thus apparent that count two charges a statutory offense.

*The Validity of the Search Warrants.*

■ Prior to defendants' arrest, an Internal Revenue agent executed an affidavit which resulted in a search of premises located at 5129 West Diversey Avenue and 3157 North Leclaire Avenue, Chicago. The agent stated in his affidavit, "There is now being concealed certain property, namely * * * betting slips, betting pads, records of bets, tickets, scratch sheets, telephones, * * * calculating machines, and diverse other * * * apparatus, * * * and records, relating to the business of accepting wagers." The agent further stated that he made and supervised an investigation of these premises and had maintained a surveillance for some period prior to the search; that agents under his supervision observed the three defendants enter and leave an apart-

---

* * * be guilty of a misdemeanor * * *."

2. Treas.Reg. § 44.6011(a)–1(b) reads: Every person required to pay the special tax imposed by section 4411 shall make a return on Form 11–C in accordance with the instructions and regulations applicable thereto.

ment at the Leclaire Avenue address daily, at regular hours, and that they saw defendants on several occasions at the Diversey Avenue address, a building which had lettering on its front window, Goodman Design & Engineering Co. The affidavit listed numerous telephone calls originating from two numbers assigned to the Leclaire Avenue address to Miami, Florida, New Orleans, Louisiana, and other out-of-state places. The agent stated he had been informed that the Miami and New Orleans numbers were registered to or used by known gamblers.

We have no difficulty in concluding that the affidavit stated grounds sufficient for the issuance of valid search warrants. United States v. Clancy, 276 F.2d 617 (7th Cir.1960), rev'd on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); Merritt v. United States, 249 F.2d 19 (6th Cir.1957).

■ During the search at the Leclaire Avenue address defendant Monaco appeared. A key taken from him was admitted into evidence. It is not clear from the record whether Monaco gave the key in response to an agent's request or if it was taken from him. Whether or not the key was voluntarily produced is immaterial. The evidence was legally obtained by the federal agents. United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653 (1950); Clay v. United States, 246 F.2d 298 (5th Cir.), cert. denied, 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69 (1957).

■ Defendants contend that special agents of the Intelligence Division of the Internal Revenue Service were not authorized to execute the search warrants. They argue that section 7608(b) of the Internal Revenue Code of 1954 (en-

acted October 23, 1962) giving investigators of the Intelligence Division authority to execute search warrants postdated the instant search of April 27, 1960. It is clear, however, that section 7608(b) was solely a clarification statute and that Internal Revenue agents had implied authority under section 7803(a) to make arrests and to execute search warrants.[3] United States v. Murphy, 290 F.2d 573 (3d Cir.1961); United States v. Joseph, 174 F.Supp. 539 (E.D.Pa.1959), aff'd, 278 F.2d 504 (3d Cir.), cert. denied, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960).

### Admissibility of Telephone Conversations.

Defendants assert that the district judge erred in admitting testimony of two agents concerning telephone conversations with unidentified persons who telephoned the apartment at the Leclaire Avenue address during the search of the premises.

The evidence shows that the agents were assigned to answer calls made to the three telephones located on the premises. On some occasions in response to the caller's request to place a bet the agents answered, "Yes," and hung up. In several instances, however, one of the agents, in response to the caller's question, "Who is this?", gave the name of one or the other of the defendants as the person speaking, and the caller then placed a bet or asked for racing information. One caller said, "I hear there's a general raid all over the country." These telephone conversations were admitted into evidence over defendants' objections.

■ Defendants contend that the conversations were hearsay; however, the statements of the unidentified callers were offered only as circumstantial evi-

---

3. Section 7608(a), enacted in 1958, gave Internal Revenue agents authority to execute search warrants with respect to the enforcement of liquor, tobacco, and firearms revenue laws. This statute was enacted to clarify existing authority of Internal Revenue agents to execute search warrants with respect to enforcement of those laws. 3 U.S.Code Cong. & Ad.News,

85th Cong., 2d Sess. pp. 4395, 4605 (1958). Similarly, section 7608(b), granting authority to investigators of the Intelligence Division of the Internal Revenue Service to execute search warrants, clarified and made specific the authority of such agents that had existed prior to the 1962 legislation.

dence of the type of operation that was being conducted on the premises. Such evidence is competent. Reynolds v. United States, 225 F.2d 123 (5th Cir.1955).

■ Defendants also contend that the testimony relating to the conversations was inadmissible because the actions of the agents in answering the telephones violated section 605 of the Communications Act of 1934, 47 U.S.C. § 605,[4] as well as the fourth and fifth amendments to the Constitution.

Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), is dispositive of the constitutional claims. That case held that telephone conversations intercepted by police officers were not protected by the fourth and fifth amendments.[5]

The question remains whether section 605 of the Communications Act was violated thereby rendering the testimony concerning the conversations inadmissible under the exclusionary doctrine developed in Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937), and expanded in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

Billeci v. United States, 87 U.S.App. D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881 (1950) is authority for the proposition that section 605 is not violated when police officers in answering a telephone do not actively impersonate the intended recipient but merely listen to what the caller has to say. That case held that the action of a United States marshal in picking up a telephone when it rang and listening to the caller, during the search of an alleged gambling establishment, was not an interception within the meaning of section 605. In Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), the Supreme Court, while not explicitly approving Billeci and similar holdings in other cases, impliedly approved that line of decisions.

Although Billeci answers in part the question before us, we must still consider the conversations in which one of the agents did impersonate the intended receivers.

The supreme court of New Jersey in State v. Carbone, 38 N.J. 19, 183 A.2d 1 (1962), faced this identical problem. In that case a police officer during a raid of the defendant's premises under a search warrant answered the defendant's telephone, impersonated the defendant, and listened to the caller. The court held this did not constitute a violation of section 605. In so ruling the court said:

"The statute was not designed to create a new category of confidential communications. * * * 'The protection intended and afforded by the statute is of the means of communication and not of the secrecy of the conversation.' Goldman v. United States * * *. 'The communication itself is not privileged and one party may not force the other to secrecy merely by using a telephone.' Rathbun v. United States * * *.

"The * * * statute protects the established line of transmission; the prohibition is against intervention into that channel. This is the view of it we find in Goldman * * *.

4.  47 U.S.C. § 605 reads in part:
    "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, * * *

*and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."* (Emphasis added.)

5.  Despite invitations to do so, the Court has not reversed Olmstead. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942).

"In Goldman * * *. The court found no violation of section 605, saying: * * * 'As has rightly been held, this word [intercept] indicates the taking or seizure by the way or before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver.'

"In the case before us, there was no tampering with the established means of communication. Indeed the officer was the immediate party to the call. The bettor intended his words to reach the officer, albeit the bettor thought he was someone else. Thus the officer did not 'intercept' a message while it was *en route* to another; there was no other on the line."

We are in agreement with the view expressed by the New Jersey court. We think the Supreme Court indicated in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), and Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), that section 605 should be given a narrow interpretation. Carbone is consistent with such an approach.

██ ██ Although the callers in the instant case were unaware that they were not being heard by the intended receivers and some were even misled into believing they were talking to one or the other of the defendants, the conversations between the callers and the agent cannot be said to have been intercepted. Interception connotes a situation in which by surreptitious means a third party overhears a telephone conversation between two persons. We believe that impersonation of the intended receiver is not an interception within the meaning of the statute. Cf. Seeber v. United States, 329 F.2d 572 (9th Cir. 1964).   z

Moreover, we see no essential difference between the situation in which a police officer picks up the telephone, answers "yes," and proceeds to listen to the caller (as in Billeci) and the situation in which the officer explicitly represents that he is the intended receiver. In the latter instance the impersonation is positive, in the first it is passive but impersonation nonetheless.

*The Scope of the Evidence.*

██ We find no error in the district judge's instruction to the jury near the end of the Government's case that, with the exception of one exhibit, all the evidence could be considered as to all defendants. Where two or more persons associate together in the commission of a crime or crimes, the acts and declarations of one are admissible as to all. United States v. Bernard, 287 F.2d 715 (7th Cir.1961). As was said in Cossack v. United States, 82 F.2d 214, 216 (9th Cir.), cert. denied, 298 U.S. 654, 56 S.Ct. 678, 80 L.Ed. 1381 (1936):

"The common object of persons associated for illegal purposes forms part of the *res gestae*, and acts done with reference to such object are admissible, though no conspiracy is charged."

██ Moreover, the district judge did not by the instruction withdraw from the jury, as defendants argue, the issue whether the defendants were engaged in a joint venture to violate the law. A judge's function is to determine the admissibility of evidence. Admissibility may involve preliminary factual determinations which perforce must be made by the judge, not the jury. Carbo v. United States, 314 F.2d 718 (9th Cir. 1963).

We have discussed the principal contested issues which are urged for reversal. Defendants present a number of other issues including whether the evidence was sufficient to show defendants' knowledge and willfulness and whether the district judge should have instructed on the issue of a lesser and included offense. They also contend that

the judge gave contradictory instructions and unduly restricted cross-examination. We have considered these and other contentions asserted. We find them to be without substance. It is unnecessary to discuss them.

The judgments are affirmed.