**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Felix Antonio ALDERISIO, Defendant-
Appellant.**

**No. 440–69.**

United States Court of Appeals,
Tenth Circuit.

March 31, 1970.

Peter R. Taft, Los Angeles, Cal. (Edward Bennett Williams and Steven M. Umin, Washington, D. C., and William H. Erickson, Denver, Colo., of counsel, were with him on the brief) for defendant-appellant.

James A. Clark, Denver, Colo. (Marvin R. Loewy and Jerome M. Feit, Dept. of Justice, Washington, D. C., were with him on the brief) for plaintiff-appellee.

Before LEWIS, HILL and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

This appeal reaches us upon judgment entered below pursuant to a limited hearing ordered by the Supreme Court to determine both the existence and effect of illegally monitored conversations as bearing on defendant-appellant's conviction. We are thus asked by appellant to review the propriety of that hearing under the exactitudes of the Supreme Court's remand.

Appellant Alderisio was initially convicted in 1965 with two co-defendants[1] by a jury in the United States District Court for the District of Colorado of conspiracy to transmit murderous threats in interstate commerce, 18 U.S. C. §§ 371, 875(c); the court sentenced Alderisio to four and one-half years' imprisonment with fine of $7500. All three convictions were affirmed on appeal to this court, Kolod v. United States, 371 F.2d 983, and the Supreme Court denied certiorari. 389 U.S. 834, 88 S.Ct. 40, 19 L.Ed.2d 95. On petition for rehearing, the Supreme Court was informed and took original notice of the claim that petitioner Alderisio's conversations had been electronically monitored by the F.B.I. on his business premises in Chicago[2] prior to and during the Denver trial. The Solicitor General responded that the Department of Justice disclaimed any arguable relevance of the recorded conversations to the case against the three defendant-petitioners. Denying the validity of the government's *ex parte* determination of the relevance question, the Court remanded and held that an adversary proceeding must be had to test the relevance of any unlawfully obtained conversations to the convictions. 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (per curiam). The Supreme Court subsequently formulated guidelines for hearing on remand when an opinion was issued on the government's motion to modify the Court's order. Alderman v. United States, 394 U. S. 165, 180–186, 89 S.Ct. 961, 22 L.Ed.2d 176. Reasserting the need for adversary proceedings on relevance, the Court directed the district court's hearing, findings, and conclusions

(1) on the question of whether with respect to any petitioner there was electronic surveillance which violated his Fourth Amendment rights, and

---

1. Co-defendant Ruby Kolod is deceased, and the petition for certiorari as to him was dismissed. Co-defendant Willie Israel Alderman was granted his motion to dismiss his appeal from the judgment of the court below.

2. The Supreme Court's per curiam opinion, *infra*, did not specify the number or names of the locations. Four monitors were, in fact, installed: and two of these, located at Celano's Tailor Shop and the Armory Lounge, by agreement of counsel were not involved in the lower court's hearing. The two locales at issue below and on appeal were the Gaylur Mercantile Company and the First National Mortgage Company.

(2) if there was such surveillance with respect to any petitioner, on the nature and relevance to his conviction of any conversations which may have been overheard through the surveillance. *Id.* at 186, 89 S.Ct. at 973.

Accordingly, an exhaustive evidentiary hearing was conducted before the United States District Court for the District of Colorado on June 18, 19, and 26, 1969. Six weeks prior thereto the government furnished appellant's counsel with the "logs," or the F.B.I.'s distilled, partly-verbatim transcripts, of the conversations in which Alderisio participated which were taped during the surveillance of the four Chicago locations[3] over the two-year period preceding the date of appellant's 1965 conviction. None of the original tapes was preserved.[4] At hearing the court further ordered turnover on appellant's motion of all the "logs" covering Gaylur and First National upon its ruling that Alderisio properly claimed standing thereto. Defense counsel were additionally furnished excerpts from "airtels"— F.B.I. interoffice memoranda compiled largely from the original tapes and "logs." These reproduced "airtels" contained conversations not noted in corresponding "logs." In part, the court below found and concluded that the turnover was complete as to Alderisio, that no relevance of the conversations to the conviction was shown or attempted to be shown,[5] and that no fourth amendment taint was revealed to the evidence originally supporting Alderisio's conviction. A new judgment was entered imposing the same sentence, and appellant brought this appeal.

The primary theory of relief urged by Alderisio compels the sensitive adjustment of a defendant's access to transcripts of unlawfully secured conversations with the government's need to preserve other investigative information in secrecy, as opposed to the tapes themselves which are unavailable here or the "logs" which in several instances did not contain monitored information revealed in "airtels." He argues that the government's asserted transfer of a complete record comprised of "logs," excerpts from "airtels," and one "airtel," does not satisfy the Supreme Court's disclosure requirement in *Alderman.* Alderisio contends that the government's turnover compliance with *Alderman* still rests on its word that the subject of electronic surveillance properly claiming standing has, in fact, received all pertinent records. No contest is urged with the lower court's determination on relevance of the records examined on hearing. Appellant thus asks for an intensified scrutiny of F.B.I. materials possibly germane to the inquiry directed by the Supreme Court: 1) the "airtels" issued over the period logged and 2) testimony from all government participants with authority over the Alderisio surveillance. We agree, but conclude that an adversary proceeding to probe the content of F.B.I. "airtels" is not necessary.

Unlike "logs," "airtels" more resemble investigative syntheses including excerpted conversations from tapes and "logs," hearsay information, and F.B.I. identifications of parties and transac-

---

3. *See* note 2 *supra.* The Gaylur Mercantile Company was monitored between March and November 1963; the First National Mortgage Company, between October 2, 1964, and April 7, 1965.

4. Parenthetically, one subject of the Court's remand order and the issue on appeal—what satisfies turnover—was reached only because the tapes themselves were not available for disclosure. The question will hopefully be confined to these and related proceedings with the enactment of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(8)(a), requiring all recordings made pursuant thereto to be retained for ten years.

5. The trial court's finding no. 8 reads: * * * the defendants, although directed to by the Court on at least six different occasions, have been unable to designate any of the material turned over to them as having any relevancy to the prosecution and convictions of these defendants.

tions not disclosed in either tapes or "logs." These "airtels" are compiled either weekly or "periodically" and forwarded to Washington Headquarters and, occasionally, to branch offices. For example, the one "airtel" examined in full by the court and counsel was sent from Chicago to Denver; and one of the two officers in charge of the Denver investigation leading to Alderisio's conviction testified that it was the only "airtel" forwarded from the Chicago investigation.

The Court in *Alderman* pointedly cautioned that "[n]one of [its ruling] means that any defendant will have an unlimited license to rummage in the files of the Department of Justice." 394 U.S. at 185, 89 S.Ct. at 973. Moreover, the district court was charged to

> confine the evidence presented by both sides to that which is material to the question of the possible violation of a petitioner's Fourth Amendment rights, to the content of conversations illegally overheard by surveillance which violated those rights and to the relevance of such conversations to the petitioner's subsequent conviction. *Id.* at 186, 89 S.Ct. at 973.

The Court, however, specifically disallowed judicial *in camera* determinations of "arguable relevance," *id.* at 182–183, 89 S.Ct. 961, as well as the *ex parte* government determinations condemned on petition for rehearing. 390 U.S. at 137, 88 S.Ct. 752. Therefore, judicial discretion under *Alderman* is counterpoised by a prior need for complete turnover before the relevance inquiry is explored. The court below found no relevance in the information obtained by the monitor to Alderisio's conviction, but erroneously denied defense requests for further examination of "airtels" on the ground that no showing of materiality was established by the requests. Absent the tapes or complete "logs" on the tapes, Alderisio is entitled to examine that portion of the Chicago "airtels" relating monitored conversations not transcribed in the "logs" if any there be.

These excerpts are all to which appellant is entitled, however. *In camera* proceedings to compare the "airtels" with the "logs" for possible additional conversations not present in the "logs" will satisfy the *Alderman* rule on disclosure. In its opinion the Court noted:

> [An *in camera* review of the records might be permissible] if the trial judge had only to place the transcript or other record of the surveillance alongside the record evidence and compare the two for textual or substantive similarities. 394 U.S. at 182, 89 S.Ct. at 971.

And subsequent to its decision in *Alderman*, the Supreme Court in Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (per curiam), ruled that *Alderman* was not contravened by *in camera* inspection of transcripts of overheard conversations "to identify only those instances of surveillance which petitioner had standing to challenge under the Fourth Amendment exclusionary rule and to doublecheck the accuracy of the Government's voice identifications." *Id.* at 317, 89 S.Ct. at 1101. In both *Alderman* and *Taglianetti*, the Court stressed that the trustworthiness or competence of the government or court were not suspect, but that *in camera* determination on relevance inadequately safeguarded the petitioners' fourth amendment rights. 394 U.S. 165, 184, 89 S.Ct. 961; 394 U.S. 316, 317, 89 S.Ct. 1099. We remand only for initial *in camera* review to check the completeness of the "logs" against the less numerous "airtels" and emphasize that the court's screening is restricted to specification of monitored conversations, and no determination of relevance, "arguable" or otherwise, will be made *in camera*.

Our order of remand renders moot appellant's claim for production of notes taken by the F.B.I. agent in charge of the Chicago investigation. This witness testified that he had examined the "airtels" and "logs," that he had noted all information in the former not contained in the latter, and that all

such information had been submitted to the court.

■ Alderisio's related claims of error involve *Alderman's* direction that a petitioner be allowed to explore the "existence" of pertinent records. *See* 394 U.S. at 186, 89 S.Ct. 961. He argues that the court below erred in denying his motion requiring the agent in charge of Alderisio in Chicago, August C. Kempff, to examine his files in order to determine whether or not the basis of any informational source was electronic surveillance if it was not designated as such.[6] The Denver field agent and his Washington supervisor responsible for the files involving Alderisio's prosecution conducted such an examination of their Denver files and uncovered the one "airtel" produced at the hearing and found not relevant to the 1965 prosecution. Kempff, who had testified during the hearing, returned to Chicago before the expanded search of both the Denver and Chicago files was suggested, the standards of which were concededly met by the Denver agent and supervisor in examining their own files. Because of Kempff's then absence, the court ruled cross-examination on point untimely and dilatory. Although the possible duplication and dissemination of evidence produced by the Chicago investigation should be explored, *see* United States v. Stein, Crim. No. 2523 (C.D.Cal. May 21, 1969), the trial court's ruling was within the bounds of *Alderman*. Cumulative testimony demonstrated that the non-designated information in the Denver file did not originate from electronic surveillance. Not only did the Denver agent testify to this effect, but the Washington, D.C. Headquarters file was searched by the supervisor of the Denver investigation who testified that no information from a non-designated Chicago electronic source was communicated to Denver.

■ However, even if the "existence" question was adequately probed, Alderisio has persuasively argued that it was error not to have required the F.B.I. headquarters supervisor to whom the Chicago agent reported, John Leggett, to testify that no additional overhearings appeared in his records on the Alderisio investigation as part of the Organized Crime Unit. The headquarters files on Alderisio had been examined by the headquarters supervisor of the Denver-Alderisio effort, who testified below, in a manner endorsed by appellant whereby the agent traced the source of all Bureau information pertaining to Alderisio's prosecution. The Court in *Alderman* stated that a petitioner has "the right to corss-examine the appropriate . officials in regard to the connection between these records and the case made against him, * * *" in addition to "specified records of overheard conversations." 394 U.S. at 185, 89 S.Ct. at 973. Appellant contends, then, that only Leggett could finally describe the extent Alderisio was investigated in this prosecution through overheard conversations, classified as such, and other information originating in overheard conversations beyond the four Chicago locations. *See* Balistrieri v. United States, 395 U.S. 710, 89 S.Ct. 2032, 23 L.Ed.2d 654 (per curiam), vacating 7 Cir., 403 F.2d 472. Because the extent of dissemination is so critical to a possible fourth amendment claim, appellant on remand should be allowed to cross-examine Agent Leggett.

■ Finally, appellant argues that the trial court erred in ruling that no attorney-client relationship existed at the time of the monitoring between one Michael Brodkin and Alderisio based on Brodkin's association with counsel in charge of the joint defense. Alderisio had sought to prove that a sixth amendment right was violated by the government's overhearing a privileged conversation and called Brodkin to substantiate the existence of the relationship. The record discloses that Brodkin represented Alderisio before a Chicago commissioner on appellant's removal to Denver

---

6. Electronic surveillance is distinguished from all other informational sources by a "C*."

and reduction of bail; engaged additional counsel for the defense; at arraignment represented co-defendant di Pietto, acquitted below; and twice relayed messages from Alderisio to Kolod in Denver.[7] Under these circumstances the court's ruling was not in error.

The case is remanded for the limited purposes designated herein and the judgment is otherwise affirmed.

---

7. Brodkin's files, if relevant, were destroyed by fire in 1967.

The court did not, as appellant contends, base its finding on Brodkin's stricken testimony, which was ordered when appellant's counsel would not allow the government to see the contents of communications from one of Alderisio's attorneys. Appellant had attempted to use these letters solely to refresh Brodkin's recollection as to dates allegedly probative of the claimed attorney-client relationship, but objected to any further disclosure of contents based on the same privilege he was trying to raise.