**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Morton Paul KANE and Martin Sklaroff,**
**Defendants-Appellants.**

No. 29200.

United States Court of Appeals,
Fifth Circuit.

Sept. 30, 1971.

Rehearing Denied Nov. 1, 1971.

Rehearing and Rehearing En Banc
Denied Nov. 8, 1971.

E. David Rosen, Miami, Fla., for Beckley & Kane & Sklaroff.

Oscar B. Goodman, Las Vegas, Nev., for Kane.

Cohen & Hogan, James J. Hogan, Alan E. Weinstein, Miami Beach, Fla., for Sklaroff.

Robert W. Rust, U. S. Atty., J. Robert Sparks, Dougald D. McMillan, Marilu Marshall, Jill Wine Volner, Attys., Department of Justice, Washington, D. C., for plaintiff-appellee.

Before BELL, THORNBERRY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Morton Paul Kane and Martin Sklaroff were convicted by a jury in the United States District Court for the Southern District of Florida on March 22, 1967, of violating 18 U.S.C.A. § 1952 (1970) [conducting gambling-connected telephone communications between Miami, Florida and Louisville, Kentucky], and of conspiracy to violate § 1952 and 18 U.S.C.A. § 1084 (1966) [transmission of bets and wagers by a wire communication facility in interstate commerce]. Kane was sentenced to concurrent five-year terms; Sklaroff was sentenced to concurrent two-year terms. On appeal, this Court, without reaching the merits, vacated the judgments and sentences and remanded the cause for further proceedings in light of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Kane v. United States, 409 F.2d 847 (5th Cir. 1969).

Pursuant to our mandate, the district court conducted an *Alderman* hearing and at its conclusion determined that the evidence utilized to convict the defendants was not tainted by illegal electronic surveillance. After the judgments of conviction and the sentences were reimposed, Kane and Sklaroff moved for new trials. The district court refused to pass on these motions on the ground that it had no jurisdiction to hear a motion for a new trial on this remand. The pending second appeal presents for decision the issues raised by the *Alderman* hearing, the seven original issues, and two additional issues on the merits not raised in the original request for review.[1]

## THE *ALDERMAN* HEARING

In 1961 the Federal Bureau of Investigation (FBI) and the Internal Revenue Service began a massive five-year investigation of gambling operations in the Miami, Florida area. As a part of this in-depth inquiry, the premises of certain suspected gamblers were placed

---

1. A third defendant, Gilbert Lee Beckley, was involved in the original appeal and was similarly resentenced on remand. His appeal from such resentencing was dismissed in a prior order. His rights are not involved here.

under a form of electronic surveillance, known in the vernacular as "bugging". This involved placing microphone gear in the premises which would pick up and transmit words spoken there. No attachments were made to any telephones; therefore, only the conversation of the persons on the premises were overheard or recorded. The evidence reveals that no surveillance was intended to be made of either Kane or Sklaroff directly, rather they happened to be parties to conversations monitored on the bugged premises of Frank Rosenthal and Edward McGrath. The Government admits that these buggings were illegal; the question for the court below in the *Alderman* hearing was whether the evidence gathered by these illegal listening devices tainted the convictions of Kane and Sklaroff.

Prior to the hearing, at the direction of the court, the Government made available to the defendants transcriptions of recorded conversations, called logs, in which the defendants were known to have been overheard. The Government also furnished logs to the defendants which disclosed instances where no words of either defendant were known to have been overheard but where one of the defendants may have been the party on the other end of the telephone. All other logs obtained by monitoring the Rosenthal and McGrath premises which were arguably relevant to this case, but not furnished to the defendants, were turned over to the trial judge for an *in camera* determination as to whether the Government had furnished all logs to the

defendants which they had any right to review under the standards of *Alderman*. In addition to having such of the logs as were made available to them at the hearing to demonstrate taint, the defendants were allowed to question three FBI agents and one former agent who had gathered evidence for this proscution, to determine whether their information as to defendants' activities came from electronic surveillance records or from independent, untainted sources.

During the course of the hearing the defendants moved to require the Government to produce additional items from its files. Their requests covered an administrative review file, such of the logs examined *in camera* by the court as contained references to "unknown" voices, physical surveillance notes of the FBI, and its interoffice memoranda called airtels. In opposition to this discovery the Government argued that no administrative review filed had ever existed; that logs containing "unknown" voices could not possibly have yielded evidence that was used against the defendants or, alternatively, that the defendants did not have the requisite standing to demand the production of such "unknown" voice logs; and that the production of surveillance notes or airtels would be extremely burdensome to the Government, would be useless to the defendants, would constitute rummaging through Government files, and would go beyond the requirements of *Alderman*. The trial court denied the defendants' discovery motion in toto, based on the findings set out in the margin.[2]

**2.** 1. Defendants claim no standing to any premises.

2. Defendants claim no standing to any specific additional conversations.

3. Mere presence on electronically surveilled premises, without more, affords no standing. United States v. Cavello, 410 F.2d 563 (2 Cir. 1969).

4. The United States delivered to this Court all extant recordings or transcriptions of recordings of electronic installations disclosed in its pre-trial memorandum which the Court has examined, *in camera*, and determined that the United States has furnished defendants all recordings and transcriptions of conversa-

tions to which defendants have standing. Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969).

5. The United States has no additional logs reflecting the presence of either of the defendants on premises which were subject to electronic installations.

6. There are no inter-office memoranda among the various agents reflecting additional electronic monitoring to which defendants have standing.

7. None of the Government's evidence supporting the convictions of defendants herein was the product of electronic surveillance reflected in the records furnished

On the present appeal Kane and Sklaroff specifically contend that the logs examined *in camera* should have been made available to the defendants for their inspection to determine relevancy, and the district court should have granted their motion for discovery of the additional government documents.

### a. *In Camera* Procedures

 In order to establish a right to review illegally recorded government records under *Alderman,* the proof must show that the conversation contained the individual's own voice or that the eavesdropping occurred on the individual's own premises. A voice whose identity is not known to the listening party does not, without more, establish standing on behalf of any person. A defendant who proposes to establish that he has standing to obtain a recording containing the voice of an unknown person has the burden of producing evidence that would indicate to the judge making the *in camera* review that he is the unknown party whose conversation has been monitored, or that the recording came from his premises. The defendants here failed to produce such evidence. They argue that placing such a burden upon them denies due process by freighting them with an impossible requirement—one they cannot meet without an inspection of the logs themselves. Certainly this argument has plausibility if considered solely from the defendants' point of view. It is easy to conjecture that if they had full access to all government records they might, by knowing the time, place and content of certain logs which appear innocuous, establish that their voices were those which are now unknown. However, we read *Alderman's* definition of standing as prescribing the outer limits of a defendant's right to view illegal wiretaps. To follow the defendants' entreaties in this case would push us beyond those outer limits.[2A] If their assertions were honored, the defendants would effectively divest the court of its specifically established prerogative of determining standing.

As explicated in Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969), the problem in *Alderman* was that the *in camera* procedures described there were inadequate to safeguard Fourth Amendment rights. However, these holdings make it explicitly clear that *Alderman* did not rule all *in camera* proceedings deficient.[3] Here the *in camera* proceedings did not entail the difficulties found compelling in *Alderman.* The record developed below demonstrates that the procedures employed by the trial court were correct.[4]

defendants. Further, nothing appears in defendants' motions, memoranda, or testimonial evidence to indicate any such taint.

8. The recordings of the *Bubis* telephone conversations admitted in evidence at the trial were not the product of illegal electronic monitoring. Hanna v. United States, 393 F.2d 700, 404 F.2d 405 (5 Cir. 1969), cert. den. 394 U.S. 1015, 89 S.Ct. 1625, 23 L.Ed.2d 42 (1969). There is no evidence that the recordings were the product of electronic monitoring of a defendant herein for an "unreasonable" length of time and, therefore, illegal. On the contrary, the case relied upon by defendants held that such monitoring by the telephone company for only the days here involved would have been "reasonable" and legal. Bubis v. United States, 384 F.2d 643 (9 Cir. 1967).

9. Defendants are not entitled under Alderman v. United States, *supra,* to disclosure of notes on physical surveillances conducted by Government agents.

10. The convictions of defendants were not tainted by the use of any evidence obtained by illegal electronic surveillance.

**2A.** United States v. Mirro, 435 F.2d 839, 841 (7th Cir. 1970).

3. "Nothing in Alderman * * * requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance." *Taglianetti, supra,* 394 U.S. at 317, 89 S.Ct. at 1101. *See also* Nolan v. United States, 423 F.2d 1031, 1041–1045 (10th Cir. 1970).

4. *See* U. S. v. Clay, 430 F.2d 165, 169 (5th Cir. 1970), rev. on other grounds, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).

■■ The route we must follow is not insensitive to the problem of safeguarding the rights of an accused from possible disingenuous assurances by the Government that it has done its duty of making available to the accused and the court all the illegal surveillance materials that are arguably relevant to the case. It recognizes that there are many means by which a Government agent committed to devious conduct may try to enshroud his illegal actions from even the most vigilant accused. For instance, the tapes could be erased and the logs burned, as soon as all relevant information had been gleaned from them. However, the balance has been struck on broader interests. The accused cannot be granted the right to rummage through the Government's files. *Taglianetti, supra.* We view the *Alderman* limits as seeking to strike a just balance between the right of a defendant to eliminate tainted evidence from his trial process with the due preservation of the right of the people to deter criminal conduct. The Court's solution is to leave to the integrity of the trial judge the duty to decide *in camera* only. issues relating to standing and to throw open to the light of adversary procedures *all* issues as to relevance of evidence which his informed judgment tells him the defendant has a right to review. This is the procedure designed to accord both the defendant and the people the best protections possible.

b. Production of Records

■ The same problem of prosecutorial good faith discussed above arises with respect to the defendants' request for surveillance notes and airtels. The trial judge required the FBI to search its files to determine whether they contained any tainted information. The argument of the defendants that this was improper necessarily asserts that they should have been allowed to search through the complete Government files which were or might have been used as a basis for investigating and prosecuting this case. This procedure has not only been negated in *Taglianetti* but also in *Alderman* when the Supreme Court held

that the scope of the hearing "must be left to the informed discretion, good sense, and fairness of the trial judge." 394 U.S. at 185, 89 S.Ct. at 973. We do not believe that the trial judge abused his discretion in defining the limits of the inquiry in this case. He was in a better position than we to judge the extent of the illegal evidence and to make a determination as to whether or not further inquiry was needed to discover any extant but unrevealed illegal evidence. In other words, the trial judge was in the best position to get a "feel" for the case in terms of defining the scope of the hearing. The trial judge could properly take into account the ample opportunity the defendants had to probe the source of those items of evidence offered to convict them and the plausibility of the Government's account of the independent source for every such aspect of the evidence. *See* Baker v. United States, 430 F.2d 499 (D.C. Cir. 1970).

The 7th Circuit is in agreement with our conclusion. United States v. Hoffa, 436 F.2d 1243 (7th Cir. 1970). Hoffa argued that the trial court erred in denying the production of similar airtels. The 7th Circuit held that although *Alderman* required all surveillance records to which a defendant has standing be turned over to him without *in camera* screening, disclosure was limited to those materials only. It was further determined that the district court acted within the ambit of its discretion in ruling that the defendant neither needed nor was entitled to anything more than the specified conversations which were produced and examined.

Defendants have called to our attention the recent case of United States v. Alderisio, 424 F.2d 20 (10th Cir. 1970). Prior to the hearing, the Government turned over to Alderisio all logs to which he had *Alderman* standing. In addition, the Government furnished to Alderisio some airtel summaries of original logs which contained conversations not noted or transcribed in the corresponding logs. Alderisio argued that these airtels

showed the Government's asserted disclosure of complete records (logs, airtel excerpts, and one complete airtel) did not satisfy the *Alderman* disclosure requirement. A defense request for amplified scrutiny of FBI files was denied by the district court. The 10th Circuit did order the cause remanded, but only for the limited purpose of requiring the court to make an *in camera* comparison of all airtels with the relevant logs to determine if the Government had disclosed all extant surveillance materials. The appellate court did not order that any additional surveillance material be made available to the defendant. Rather, the rationale of *Alderisio* is that the issue of "completeness" should be decided by the court *in camera* and only in the event that the district court should hold that the Government had failed to fully disclose, could the defendant obtain and review the undisclosed airtels and logs for relevancy. There is no issue of "completeness" in the case at bar. Our holding is that the district judge should rule on questions of standing *in camera* before the defendants are allowed to determine relevancy. Thus it appears that the *Alderisio* case supports rather than detracts from the vitality of our holding.[4A]

■■ We conclude that the district court did not err in limiting the scope of the hearing both as to production of the logs in question and the airtels and surveillance notes. We have reviewed the finding of the district court that the convictions were not tainted by illegal evidence and determine that finding to be clearly correct. In addition, we agree with the district court that it had no jurisdiction to consider motions for new trial. Such consideration would have been contrary to the limited purposes of the remand mandate. Finally, the defendant Kane argues that the trial judge erred in not requiring a pre-sentence report to be submitted prior to the entry of sentence. On this record, we perceive no abuse of discretion. *See* United States v. Hutul, 416 F.2d 607, 627 (7th Cir. 1969); King v. United States, 410 F.2d 1127 (9th Cir. 1969). No prejudice can be shown since the trial judge heard evidence as to all of the mitigating circumstances. Then too it must be noted that even the present sentences are not beyond correction or reduction. *See* Fed.R.Crim.P. 35.

## THE SEVEN ORIGINAL ISSUES

■ In the original appeal, defendants raised the seven issues set out and numbered in the margin.[5] On the present appeal, the court has only heard arguments of counsel on the *Alderman* issue, discussed above, and on the newly

---

4A. *See*, Mirro, *supra* n. 2a, 435 F.2d at 841.

5. 1. It was error to receive in evidence the tape recordings of the conversations overheard on the Bubis wiretap.

2. The Wall testimony, being entirely dependent upon an identification made through the Bubis tapes, was thus tainted by the illegal wiretap and should have been excluded, as should, consequently, all of the credit card evidence of which the Wall testimony was the cornerstone.

3. The Hanna search warrant was admittedly based on information from the illicit Hanna wiretap, so that the receipt in evidence of the material seized under that warrant was error.

4. The warrants for all the other coordinated Miami searches were based on information from the Hanna wiretap and the illegal Rosenthal bug, so that the re-

ceipt in evidence of the material seized under all of the said warrants was error.

5. Assuming arguendo that the record does not disclose such taint of the evidence by illegal eavesdropping as to require reversal of the convictions, reversal is nevertheless required because of the erroneous restrictions imposed on pretrial and voir dire inquiry into the government's illegalities.

6. The FBI's four hours of telephone answering in one of the raided premises was an unconstitutional search, so that it was error to receive the testimony of Agent Scranton as to the contents of the communications taken through that search.

7. The government's charts purportedly summarizing the evidence were improper under this Court's standards and should have been excluded from evidence.

raised issues discussed in the final section of our opinion here. As to the issues presented on the former appeal, we have determined that oral argument is not necessary.[6] Our discussion of the *Alderman* hearing is dispositive of Issue 5 and the question of the Rosenthal bug in Issue 4. Issues 1–4 are concerned with the so-called Hanna and Bubis tapes. These tape recordings came into existence when two different telephone companies tapped into two telephone lines which they had reason to believe were being used fraudulently. A description of the circumstances under which the Hanna recordings were made and the establishment of their legality is contained in Hanna v. United States, 404 F.2d 405 (5th Cir. 1968). Based upon this precedent, Issue 3 and the remainder of Issue 4 are without merit. However, Issues 1 and 2, involving the admissibility of the Bubis tapes themselves and testimony dependent upon evidence obtained from such tapes, call for some discussion. The 9th Circuit in Bubis v. United States, 384 F.2d 643 (9th Cir. 1967) ordered the use of these tapes suppressed in the trial of Bubis on the ground that they covered three months of wiretapping by the telephone company and that this period constituted such an unreasonable amount of time for the telephone company to ascertain whether or not Bubis was making long distance calls without paying the tolls, that its use in a criminal proceeding could not be condoned. It does not follow, however, that the portion of these same tapes introduced in the instant trial should have been suppressed. Assuming, without deciding for this Circuit, that we would hold three months to be such an unreasonable amount of time for a private company to monitor equipment it believed was being misused and that we would bar the use of such monitoring in a criminal case, we decline to hold that all use of the tapes so obtained would be proscribed. Only the first four days of the Bubis wiretapping was utilized in the trial below. Certainly it would be inconsistent to assert that the court must refuse to consider evidence gathered in four days of wiretapping as unreasonably intrusive and at the same time hold, as we did, that six weeks was not an unreasonable period for the company to monitor Hanna's telephone. We limit our ruling here to holding that without regard to whether the subsequent activities in Bubis' case were reasonable, such subsequent wiretapping does not preclude use of the tapes recorded during the first four days of that period. In addition, it should be borne in mind that we consider the issue as it relates to the defendants here and not to Bubis himself because, at best, these defendants possess doubtful standing to protest the unreasonableness of the wiretapping since only the voice of the non-appealing defendant, Beckley, was overheard in the four-day period used here.[7] We conclude that it was not error to admit the Bubis tapes as against these defendants.

Issue 6 asserts that the action of an FBI agent in answering the telephone on one of the raided premises and posing as a bookie constitutes a search proscribed by the Fourth Amendment and violates 47 U.S.C.A. § 605 (1962). The agent was properly on the premises pursuant to a valid search warrant. Gambling paraphernalia described in the warrant was seized and defendant Sklaroff was arrested. However, for four hours following the raid the agent answered the telephone, taking bets and dispensing gambling information. At trial he was allowed to testify as to the contents of the calls.

█ United States v. Pasha, 332 F.2d 193 (7th Cir. 1964) is dispositive of the statutory point, and we deem further

6. Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y. et al., 431 F.2d 409, Part I (5th Cir. 1970).

7. *See* Alderman, *supra*, Part I, 394 U.S. at 171–173, 89 S.Ct. 961.

discussion unnecessary. The constitutional question, however, is not so easy. *Pasha* appears to be the only case dealing with the issue that is squarely in point on the facts. In summary fashion, *Pasha* relied exclusively upon the holding in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) that "telephone conversations intercepted by police officers were not protected by the fourth and fifth amendments. [to the Constitution]" 332 F.2d at 197. The holding in *Olmstead* has, of course, been overruled by Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *Katz* does not, however, necessarily control this case. The thrust of *Katz* was to dispel the notion that in order for Fourth Amendment guarantees to arise there must be a trespass upon a constitutionally protected area. It emphasized that a person's expectation of privacy is the compelling consideration. Unlike *Katz,* the defendants here were not being overheard. Therefore, they could not have had an expectation of privacy as to a conversation in which they did not participate. In addition it is important to note that the agent never impersonated the defendants, and the testimony does not show that any caller was under the misapprehension that he was speaking to one of the defendants. The defendants cannot claim someone else's right of privacy.

The evidence gleaned from the telephone calls is analogous to the seizure of evidence not described in a search warrant. Evidence not described in a valid search warrant but having a nexus with the crime under investigation may be seized at the same time the described evidence is seized. Bryant v. United States, 252 F.2d 746 (5th Cir. 1958); United States v. Bridges, 419 F.2d 963 (8th Cir. 1969); Johnson v. United States, 293 F.2d 539 (D.C. Cir. 1961). The test is whether the agent had probable cause to "believe that the evidence sought will aid in a particular apprehension or conviction." Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). Of course the warrant here could not have described any words to be seized from telephone calls that had not yet been made, but, with equal certainty, an agent in these circumstances had probable cause to believe that other evidence of gambling could be obtained by answering a ringing telephone in premises that had already yielded warrant-authorized evidence of gambling. We should not be understood as holding that this was not a form of search which must be tested by Fourth Amendment standards of reasonableness. What we find is that under these circumstances this search did not exceed those standards. The officer had a duty to gather and preserve this contemporaneous evidence of criminal activity occurring in his presence. If a number of the calls had been innocent calls or if the search had ben conducted for a prolonged period of time, then the standards of reasonableness could be transgressed. But the record before us shows the agent received no innocent calls; rather, all of the 53 calls received during the four-hour period concerned gambling. One further caveat is appropriate. We in nowise intend to trench upon the rule which holds that in every search an officer should obtain a warrant as soon as practicable. We simply cannot fault the police conduct disclosed here.

In Issue 7 the defendants concern themselves with charts prepared by the Government purporting to summarize the evidence and argue that these charts should have been excluded. We disagree. The charts were based upon competent evidence already before the jury, and the primary evidence utilized to construct the charts was available to the defendants for comparison in order that the correctness of the summary could be tested. In addition the agent who prepared the charts was available for cross-examination. Finally the jury was given correct instructions concerning their consideration of the charts. *See* Gordon v. United States, 438 F.2d

858, 876–77 (5th Cir. 1971). The trial judge did not abuse his discretion in allowing these charts into evidence. *See* Baines v. United States, 426 F.2d 833 (5th Cir. 1970); McDaniel v. United States, 343 F.2d 785 (5th Cir. 1965)

## THE NEW ISSUES

While normally we might not permit new matters to be considered on the return of a remanded cause, especially matters which could cause prejudice by delay in their assertion, we deem it more appropriate to dispose of those raised here on their merits rather than to hold that they come too late. On this appeal, the defendants contend for the first time that a portion of the evidence admitted at trial eventuated from a search warrant issued upon probable cause that the Wagering Tax Act was being violated. This Act, of course, was found to be fatally defective on Fifth Amendment grounds. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). The defendants thus argue that *Marchetti-Grosso* vitiates this search warrant and precludes the introduction of any evidence gained therefrom. This contention was decided adversely to the defendants in United States v. Scaglione, 446 F.2d 182 (5th Cir. 1971).

The last additional point of error urged by the defendants pertains to the admission of the defendants' income tax returns in order to show that their major source of income was gambling. Included in the returns was a deduction for a wagering tax stamp which was couched in these words: "Stamp tax license." Defendants argue that the purchase of the stamp described was compelled in violation of their Fifth Amendment rights under the *Marchetti-Grosso* rationale, and thus the returns which disclosed that they bought this stamp should not have been admitted. This contention is without merit. First of all, the stamp deduction was only one item on the complete return and it was never specifically brought to the attention of the jury. The only way the jury could have been apprised of the existence of the deduction was by reading the details in the returns. Even had the jury pursued this course, we cannot say they would have concluded that the defendants were thereby stating they were gamblers. Thus our case is distinguishable from Nolan v. United States, 395 F.2d 283 (5th Cir. 1968) relied upon so heavily by the defendants. In addition, these defendants certainly were not compelled to claim a deduction for the stamp. Their action in doing so was voluntary and was in no way compelled by law. Defendants are not constitutionally excused from any resulting prejudice.

The judgments of conviction are

Affirmed.

## PER CURIAM:

It is ordered that the petition for rehearing filed on behalf of Martin Sklaroff in the above entitled and numbered cause be and the same is hereby denied.

## ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

The Petition for Rehearing on behalf of Morton Paul Kane is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.