STATE OF NEW JERSEY, v.
PAUL BARBER, DAVID ROBINSON, DEFENDANTS.

Superior Court of New Jersey
Law Division (Criminal)

Decided April 10, 1979.

*Mr. John Whalen,* Assistant Essex County Prosecutor, for the State of New Jersey.

*Mr. Furman L. Templeton, Jr.,* for defendant Paul Barber (*Mr. Richard A. Rafanello,* on the brief).

*Mr. Richard A. Rafanello* for defendant David Robinson.

LOFTUS, J. S. C. This is a criminal case involving alleged violations of the Cigarette Tax Act, *N. J. S. A.* 54:40A–1 *et seq.* A motion has been made by defendants Paul Barber and David Robinson to dismiss the indictment or, in the alternative, for suppression of intercepted wire communications regarding alleged violations of the Cigarette Tax Act, testimony relating to surveillance of a 1974 Dodge van, New Jersey license No. 859–GSF, as well as all physical evidence recovered from the 1974 Dodge van as a result of a search warrant executed October 16, 1977. The facts relative to this motion are not in dispute.

On September 22, 1977 the Assignment Judge of Essex County signed an order authorizing interception of wire communications at 427 North 11th Street, Newark, listed to J. Sibio, for alleged violations of bookmaking statutes. In the course of intercepting messages concerning bookmaking, police officers overheard conversations relating to the sale of cigarettes at a price that indicated a sale without tax. The police began physical surveillance of the suspect premises, and on October 2, 1977 observed a 1974 Dodge van, license No. 859–GSF, unloading cartons that appeared to be cigarettes.

On October 6, 1977 another order authorizing interception of communications regarding bookmaking was obtained on a phone at 15 Barbara Street, listed to Edward A. Wilson. More communications were intercepted regarding alleged gambling violations. On October 16, 1977 a search warrant was obtained for the premises 427 North 11th Street and for the Dodge van, license No. 859–GSF. The search warrant was executed on October 16, 1977 and 1,213 cartons of untaxed cigarettes were recovered from the van. In addition, large amounts of cash were recovered from the persons of Paul Barber and David Robinson, who were apprehended in the van. Cigarette orders and 22 cartons of cigarettes were recovered from the premises at 427 North 11th Street, Newark.

Subsequently, these matters were presented to a grand jury. In the course of the presentation disclosure was made of intercepted information regarding offenses other than those authorized in the wiretap order. An indictment was returned on January 10, 1978.

Defendants argue three points in support of their motion to suppress:

1. Interception of the information regarding violations of the Cigarette Tax Act was unlawful since only crimes listed in *N. J. S. A.* 2A:156A–8 may be authorized as the object of wiretap interception.

2. Disclosure and use of the information regarding violations of the Cigarette Tax Act were unlawful as not conforming to *N. J. S. A.* 2A:156A-18.

3. Information obtained from the search of the van on October 16, 1977 must be suppressed as it is the fruit of the illegal interception and disclosure, since the warrant was based partly on information supplied by the intercepted wiretaps.

4. The search warrant was based on information stale and unable to support probable cause, since the observation of the van occurred 14 days before the execution of the warrant.

Defendants move not only for suppression of the illegally intercepted material but dismissal of the indictment, pursuant to *U. S. v. Brodson,* 528 *F.* 2d 214 (7 Cir. 1976). Defendants contend that dismissal is the appropriate remedy for unlawful disclosure of wiretap information.

In any electronic surveillance the provisions of the federal statute, 18 *U. S. C. A.* § 2510 *et seq.,* as well as the authorizing state statute, *N. J. S. A.* 2A:156A-1 *et seq.,* must be complied with. Interpretation of a state wiretap statute can never be controlling where it imposes requirements less stringent than the controlling standard of Title III. However, if a state sets forth procedures more exacting than those of the federal statute, the requirements of the state act would have to be met as well. *United States v. Marion,* 535 *F.* 2d 697, 702 (2 Cir. 1976).

The right to move to suppress a communication on the basis of unlawful interception is limited by both state and the federal statute to an "aggrieved person." *N. J. S. A.* 2A:156A-21 provides that

Any aggrieved person in any trial, hearing, or proceeding in or before any court or other authority of this State may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that:
a. The communication was lawfully intercepted;
b. The order of authorization is insufficient on its face;

c. The interception was not made in conformity with the order of authorization.

*N. J. S. A.* 2A:156A-2(k) provides that:

"Aggrieved person" means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed.

18 *U. S. C. A.* § 2518(10)(a) is identical to *N. J. S. A.* 2A:156A-21. 18 *U. S. C. A.* § 2510(11) is identical to *N. J. S. A.* 2A:156A-2(k).

In this case defendants were not parties to the conversations overheard. They merely assert that "none of the five intercepted wire communications contained any reference * * * to the defendants, Paul Barber and David Robinson." Some unidentified male voices were included on the tapes, but defendants have not attempted to identify themselves as these unknown persons. When an "unknown" voice is included on a tape, it is a defendant's burden to produce evidence indicating he is the unknown person, *U. S. v. Kane,* 450 *F.* 2d 77 (5 Cir. 1971), *cert.* den. 405 *U. S.* 934, 92 *S. Ct.* 954, 30 *L. Ed.* 2d 810 (1972). The defendants here have not produced such evidence.

Additionally, defendants were not the targets of the wiretaps. The target of the initial wiretap was Madeline Sibio and other unidentified persons engaged in bookmaking. Defendants do not claim to be any such unidentified persons. Neither defendants' phones nor premises were tapped pursuant to the September 22 authorization, nor pursuant to the October 5 authorization.

Therefore, defendants do not qualify as "aggrieved persons" under the federal or state statutes, 18 *U. S. C. A.* § 2518(10)(a) or *N. J. S. A.* 2A:156A-21. Therefore, they have no stand'ng to contend that the interception of information was unlawful.

Defendants contend, however, that they are not moving solely for suppression of evidence via *N. J. S. A.* 2A:156A-

21 but for dismissal of the indictment as per *U. S. v. Brodson,* 528 *F.* 2d 214 (7 Cir. 1976), because of failure of the State to comply with the disclosure provisions of the statute. The implication is that such dismissal would bypass standing requirements.

Neither the federal nor state wiretap law clearly authorizes suppression of evidence or dismissal of an indictment as a remedy for noncompliance with disclosure provisions, although the legislative history of the federal statute indicates that 18 *U. S. C. A.* § 2518 (providing that an aggrieved person may move to suppress) must be read in connection with §§ 2515 and 2517 (governing disclosures) which it limits, 2 *U. S. Code Cong. & Admin. News* 2195 (1968). Both federal and state courts have recognized that occasionally it may be proper to grant a remedy for disclosure violations. *U. S. v. Brodson, supra,* relied on by defendants, dismissed an indictment where an authorization was not obtained under 18 *U. S. C. A.* § 2517(5) — the counterpart of *N. J. S. A.* 2A: 156A–18 — before disclosing information of "other offenses" to a gand jury. *U. S. v. Marion,* 535 *F.* 2d 697 (2 Cir. 1976), reversed two counts of a conviction on the same ground. Likewise, *State v. Murphy,* 148 *N. J. Super.* 542 (App. Div. 1977), the only New Jersey case on disclosure provisions, noted (at 548), "Although *N. J. S. A.* 2A:156A–21 does not authorize suppression for the failure to comply with post-interception provisions, suppression may be an appropriate judicial remedy."

Although courts have granted redress for violations not set out in the sections authorizing suppression, no court has intimated that it would grant a remedy to parties other than those ordinarily entitled to redress. In all the cases examined granting a remedy for the disclosure violation, defendants moving for redress qualified as "aggrieved persons." In *Murphy, supra,* defendant's home phone was tapped. In *Brodson, supra,* and *Marion, supra,* defendants were parties to overheard conversations.

Assuming *arguendo,* that the statutory standing requirements did not apply to violation of disclosure provisions, a party must allege an injury in order to obtain a remedy. The wiretap laws were passed to protect against violations of Fourth Amendment rights — to prevent government eavesdropping on private conversations or government intrusion by electronic means into the privacy of a person's home. *Brodson* and *Marion* both point out that strict compliance with disclosure provisions is necessary to protect Fourth Amendment rights. In order for a party to recover for a violation of Fourth Amendment rights, he must assert a Fourth Amendment injury, *i. e.,* that his privacy has been invaded. The Supreme Court has repeatedly held that Fourth Amendment rights are personal, and has repeatedly refused to expand the concept of "injury" for Fourth Amendment violations to include those who are being prosecuted as a result of government-obtained information or material but who have not had their personal privacy invaded. *Rakas v. Illinois,* —— *U. S.* ——, 99 *S. Ct.* 421, 58 *L. Ed.* 2d 387 (1978) ; *Alderman v. U. S.,* 394 *U. S.* 165, 89 *S. Ct.* 961, 22 *L. Ed.* 2d 176 (1969). Here the defendants' privacy was not invaded by the use or disclosure of conversations not involving them. Therefore, defendants do not have standing to move for a dismissal of the indictment based on the State's alleged failure to comply with disclosure provisions of *N. J. S. A.* 2A:156A–18, nor to move for suppression of the content of conversations obtained pursuant to wiretaps conducted between September 24 and October 5 on a telephone at 427 North 11th Street, listed to J. Sibio, nor for suppression of conversations obtained pursuant to wiretaps conducted between October 6 and October 9 on a telephone at 15 Barbara Street listed to Edward A. Wilson.

Defendants, further assert that the surveillance of the Dodge van and the search warrant for the van were "tainted" as "fruits" of an illegal interception. Even assuming, *arguendo,* that the interceptions of cigarette tax information were illegal, defendants have no standing to contest those

interceptions. The "taint" of the subsequent surveillance and search — the "fruits" — depends not on any aspects of the surveillance and search themselves, but relates back to the illegality of the initial interception — the "poisonous tree" from which the "fruit" emanated. *Wong Sun v. United States,* 371 *U. S.* 471, 83 *S. Ct.* 407, 9 *L. Ed.* 2d 441 (1963). Thus, it is defendants' standing to challenge the "poisonous tree" that is relevant to their motion. If defendants have no standing to challenge the "poisonous tree," they have no standing to challenge the "fruit" of that tree. Thus, neither the surveillance of the Dodge van nor the search warrant was "tainted" so far as defendants are concerned. See *State v. Cocuzza,* 123 *N. J. Super.* 14 (Law Div. 1973).

Therefore, the motion of defendants to dismiss the indictment, or in the alternative, to suppress the intercepted communications regarding violations of *N. J. S. A.* 54:40A–1 *et seq.,* the Cigarette Tax Act, testimony regarding surveillance of one 1974 Dodge van with New Jersey registration 859–GSF, and all physical evidence seized as a result of the execution of a search warrant executed on said Dodge van on October 16, 1977 is hereby denied.