UNITED STATES of America,
Plaintiff-Appellee,

v.

Jorge CONGOTE, Defendant-Appellant.

No. 80–5258.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Sept. 21, 1981.
As Corrected Dec. 7, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452, October 14, 1980.

Steven E. Kreisberg, Miami, Fla., for defendant-appellant.

A. Scott Miller, Sonia E. O'Donnell, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL and VANCE, Circuit Judges, and LYNNE,* District Judge.

LYNNE, District Judge:

This appeal presents us with another opportunity to clarify the now famous phrase "legitimate expectation of privacy"[1] as it serves to limit the fourth amendment's guarantee of freedom from unlawful search and seizure. On the evening of November 8, 1979, co-defendants Bennett and Mitchell sold approximately one kilogram of cocaine to agents of the Drug Enforcement Administration (DEA) in Hialeah, Florida. After their arrest, Bennett and Mitchell identified co-defendant Brock as their supplier. Bennett telephoned Brock from the police station and conversed freely about the cocaine. He later led the agents to the apartment where Brock had delivered the cocaine, provided the agents with Brock's physical description, and notified the agents of the presence of a woman in the apartment at the time he received the drugs.

---

* Honorable Seybourn H. Lynne, District Judge for the Northern District of Alabama, sitting by designation.

1. *See Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).

As one agent knocked on the apartment's west door, Brock opened the east door and was confronted by several agents. They entered the apartment uninvited. While checking the apartment for other occupants, the agents discovered co-defendant Ms. Marszalkowski, as well as cocaine, drug paraphernalia, a handgun, and $7364 in cash, all in plain view. Both occupants were arrested and removed for processing. The agents consulted an Assistant United States Attorney who warned them not to search the apartment, but simply "to secure it," until they could obtain a search warrant. Two agents remained inside the apartment. They answered Ms. Marszalkowski's telephone when it rang, noting several calls from a man identifying himself as "George" who asked to speak to Brock.

On the morning of November 9, 1979, Agents Cairo and Peacher arrived at the apartment to relieve the other agents. The man known as "George" called once more, spoke with Agent Cairo, and agreed to meet him at the Best Department Store. When "George" met the agents at the store, he complained that he had supplied Brock with four kilos of cocaine but had only received payment for one. He described the wrapping of the four kilos and stated that the number "24" appeared on each package. The cocaine that Bennett and Mitchell had sold to the agents on the preceding day was wrapped as George described and marked with the number "24." The agents and George returned to the apartment where, in the presence of other agents, George again described the cocaine he had sold to Brock. George (Congote) was then arrested at 2:00 p. m. on November 9, 1979. The agents did not obtain a warrant to search the apartment until 2:50 p. m. on that date.

On February 1, 1980, appellant Congote filed a motion to suppress his statements. A federal magistrate, after an evidentiary hearing, recommended the denial of the motion on February 8, 1980. Appellant filed objections to the magistrate's recommendations on February 13, 1980. Following another hearing, the district judge denied the motion to suppress, but found that the warrantless arrest of Brock and Marszalkowski violated their fourth amendment rights. He also found that appellant had standing to assert the violation of the rights of Brock and Marszalkowski. This finding was contrary to that of the federal magistrate. Appellant was convicted after a jury trial on February 15, 1980, of conspiring to transport cocaine and received a four-year sentence. In spite of the egregious violations of the constitutional rights of appellant's co-conspirators, we affirm the district court judge's denial of appellant's motion to suppress. Our reasons, however, differ from those stated by the court below.

■ Two recent Supreme Court cases, *Steagald v. United States,* —— U.S. ——, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), confirm the lower court's decision that the agents' initial entry into the apartment was illegal. In *Steagald,* DEA agents entered petitioner's home in order to execute a valid arrest warrant for a fugitive named Lyons. While searching for Lyons, whom the agents never found, they discovered a large amount of cocaine. Petitioner was arrested and convicted. The Supreme Court, in reversing this Court, held that in the absence of exigent circumstances, the government may enter the home of a third party to execute an arrest warrant only with consent of the third party, or with a valid search warrant. By implication, this holding reversed *United States v. Cravero,* 545 F.2d 406 (5th Cir. 1976), in which we held that an officer with an arrest warrant and the reasonable belief that its subject is inside, need not procure a search warrant to enter the home of a third party for the purpose of making an arrest. In the instant case, the agents lacked both an arrest warrant for Brock and a search warrant when they entered Marszalkowski's apartment. It is undisputed that neither of the apartment's occupants consented to the agents' entry. Moreover, there were no

exigent circumstances to justify the warrantless entry.[2]

■ In *Payton*, the Court held that the fourth amendment prohibits the police from entering a suspect's home to make a warrantless routine felony arrest in the absence of exigent circumstances. Thus the arrest of Marszalkowski, the lessee of the apartment, was also illegal.[3]

Appellant argues that the agents acted illegally by remaining inside the apartment after the occupants had been arrested but before the agents obtained a search warrant. In *Jeffers v. United States*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), police officers entered the hotel room of petitioner's aunts to search for narcotics. They possessed neither a search nor an arrest warrant. The court found this entry violative of the fourth amendment.[4] The occupants of the room were absent; there were no exigent or exceptional circumstances justifying the warrantless search; and, the officers could have easily prevented any destruction of evidence "by merely guarding the door." *Id.* at 52, 72 S.Ct. at 95.

■ Although the facts of *Jeffers* are very close to those of the case *sub judice*, *United States v. Griffin*, 502 F.2d 959 (6th Cir. 1974), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645, is even more on point. In *Griffin*, government agents had probable cause to search petitioner's apartment and dispatched one officer to procure a warrant. Before the latter's return, the agents entered the apartment to secure it. The Court found a violation of the fourth amendment and excluded all evidence that the officers found in plain view. The officers had reason to believe that the apartment was unoccupied; there were no exigent circumstances; and, the government did not prove "that the evidence it sought was in danger of destruction." *Id.* at 961. The government agents in the instant case conducted an occupant search immediately upon entering the apartment and removed Brock and Marszalkowski. There was no reason for them to remain inside the apartment. Their doing so constituted a violation of the lessee's fourth amendment rights.

■ *United States v. Kane*, 450 F.2d 77, 84–85 (5th Cir. 1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810 (1972), addresses the issue of the propriety of police officers answering a suspect's telephone during a search. In *Kane*, federal agents searched for evidence of gambling operations pursuant to a valid search warrant. We found no violation of the fourth amendment because the phone played such an integral role in the crimes under investigation.[5] In the instant case, the only call concerning cocaine known by the agents to have transpired over Marszalkowski's telephone was the staged call made by Bennett to Brock from the police station. Moreover, the agents inside the apartment lacked a search warrant. By answering the tele-

---

**2.** Even the possibility of the destruction of evidence is not enough to qualify as an exigent circumstance. In *United States v. Hayes*, 518 F.2d 675, 678 (6th Cir. 1975), the court required proof that evidence inside the premises was in imminent danger of destruction.

**3.** The application of *Payton* to the instant case is not the retroactive application of a new rule. Indeed, in *Payton* the Court emphasized that it was simply clarifying what was already the law in most circuits. 445 U.S. at 575 & n.4, 100 S.Ct. at 1374 & n.4.

**4.** "Standing in *Jeffers* was based on Jeffers' possessory interest in both the premises searched and the property seized." *Rakas v. Illinois*, 439 U.S. at 136, 99 S.Ct. at 426.

**5.** In *Kane*, the phone rang and was answered fifty-three times in four hours. All of the calls

concerned the bookmaking operations on the premises. 450 F.2d at 85. *See also United States v. Campagnuolo*, 592 F.2d 852, 861–63 (5th Cir. 1979), which concerned the search of an alleged gambling facility pursuant to a valid warrant. The police answered the phone forty-two times in one hour and twenty minutes. 592 F.2d at 861. We found that this search did not violate federal wiretapping laws, but did not address the issue of fourth amendment violation because appellant failed to raise it. 592 F.2d 863 n.14. One should contrast the calls in these cases with many of those received by the agents in the instant case. The record shows that the agents conversed with some of Ms. Marszalkowski's callers about purely personal matters.

phone, they were grossly exceeding the Assistant United States Attorney's instructions merely to secure the apartment. They thus violated the lessee's fourth amendment rights.[6]

The core question in this case is whether appellant has standing to assert the violation of Brock's and Marszalkowski's fourth amendment rights. If so, all of his statements made to the agents over the telephone and in the apartment should have been excluded as "fruit of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The agents would not have found appellant *without the unconstitutional entry into the apartment,* arrests, and use of the telephone.

In recent years, the Supreme Court has staged a massive retreat from the automatic standing rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In *Jones,* the Court held that persons charged with crimes of possession need not prove the violation of their own constitutional rights to have standing. They must only demonstrate that the seizure of the incriminating evidence violated the fourth amendment. The Court began its withdrawal from *Jones* in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The *Rakas* Court held that a defendant could not invoke the exclusionary rule unless the alleged unconstitutional search had invaded his own legitimate expectation of privacy. The government argues in the instant case that appellant has no standing to assert the fourth amendment violation that occurred when Brock and Marszalkowski were arrested. We agree because appellant had *no expectation of privacy* in Marszalkowski's apartment. Indeed, he had never been there and did not

even know the address. This opinion is buttressed by three recent cases in which the Supreme Court expressly overruled the *Jones* automatic standing rule.

In *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the appellants were convicted of possessing stolen mail. The police located the incriminating evidence during an allegedly unconstitutional search of the apartment of one defendant's mother. The district court and the First Circuit accepted defendants' automatic standing argument and excluded the incriminating evidence. The Supreme Court remanded the case for a determination of whether either or both defendants possessed a legitimate expectation of privacy in the apartment. Similarly in *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the owner of drugs located during an unconstitutional search of another's purse could not benefit from the violation of the purse-owner's fourth amendment rights. The Court stated that the defendant had no expectation of freedom from government intrusion into the purse. Finally, in *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), the Court found the defendant taxpayer to have no legitimate expectation of privacy in a loan guaranty agreement illegally seized from the brief case of his banker.[7] Thus, although the arrest, entry into the apartment, and the act of answering Marszalkowski's telephone may all have been illegal, these violations will not serve to exclude appellant's statements. He had no legitimate expectation of privacy in the apartment.

Appellant draws an appealing analogy between the interception of his telephone calls and the evils that federal wire-

6. The foregoing discussion of the asserted violations of the rights of Brock and Marszalkowski, upon which appellant claims standing to rely, are merely assumptions based upon the record in this case, including the magistrate's report. It is not to be construed as a definitive holding that their respective rights were in fact violated.

7. We have embraced the abandonment of the *Jones* automatic standing rule in a number of

recent cases. *See United States v. Herbst,* 641 F.2d 1161 (5th Cir. 1981) (defendants lacked standing to challenge constitutionality of a body search of co-defendant because they lacked legitimate expectation of privacy in his body or in the cocaine found thereon); *United States v. Richards,* 638 F.2d 765 (5th Cir. 1981) (defendant had standing to object to search of package he had received in mail because he had a legitimate expectation that the contents

tapping statutes[8] seek to prevent.[9] The government notes, however, that the federal wiretapping statutes provide the following pertinent exception to their general warrant requirement. In *United States v. Campagnuolo*, 592 F.2d 852 (5th Cir. 1979), we examined the legislative history of Section 2511(2)(c). We found that Congress intended to exclude from coverage conversations in which one party consented to the wiretap or recording. *Id.* at 862–63. In the instant case, the only "interception" of the telephone calls was by a party to the conversation. He did not record or transcribe them in any way. Moreover, appellant instituted the calls and spoke voluntarily and without hesitation to the agents. None of the agents pretended to be Brock, the party appellant wished to reach. Appellant had no legitimate expectation of privacy in his telephone conversation with the agents. He assumed the risk of exposure when he spoke freely with strangers.

The district judge held that all incriminating items seen by the agents when they entered the apartment to arrest Brock and Marszalkowski were tainted by the unconstitutional arrest. He did not, however, exclude from their trial the evidence uncovered later in the apartment pursuant to a valid search warrant. The government introduced this same evidence in appellant's trial over his counsel's objections as to its relevancy. By his own admission, appellant connected himself with Brock, telling the agents at the apartment that he had "done fifteen kilos with him [Brock] in the past month and a half."[10] The connection between Brock and appellant is apparent. The court below committed no error in admitting evidence of their drug dealings.

AFFIRMED.

of the sealed package were private); *United States v. Davis*, 636 F.2d 1028, 1035 n.4 (5th Cir. 1981) (lawyer and lawyer-accountant had no standing to object to search of client's home).

**8.** Title III, Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*

**9.** "Section 2518(10)(a) gives 'any aggrieved person' the right to move to suppress any oral communication which had been unlawfully in-

tercepted, as well as any 'evidence derived therefrom'. Section 2510(11) in turn defines 'aggrieved person' as 'a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed'." Appellant's Brief at 38. Appellee notes, however, that "interception" has a special meaning in the statute which does not fit the facts of this case. *See United States v. Campagnuolo*, 592 F.2d 852, 862 (5th Cir. 1979).

**10.** Transcript at 201.