**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Vito DAVANZO a/k/a Vic Davanzo,**
**Bruno Frank Gerillo, Jasper Brown,**
**Defendants-Appellants.**

**No. 81–5805.**

United States Court of Appeals,
Eleventh Circuit.

March 11, 1983.

Fred Haddad, Sandstrom & Haddad, Fort Lauderdale, Fla., for Vito Davanto.

Bruce L. Randall, Fort Lauderdale, Fla., for Bruno Frank Gerillo.

Robert J. Lehner, Sp. Atty., U.S. Dept. of Justice, Miami Strike Force, Miami, Fla., William C. Bryson, Deborah Watson, Washington, D.C., for plaintiff-appellee.

Before FAY and CLARK, Circuit Judges, and MARKEY *, Chief Judge.

MARKEY, Chief Judge:

Brown, Davanzo, and Gerillo appeal their convictions of conspiracy in violation of 18 U.S.C. § 371 (Count I),[1] wire fraud in violation of 18 U.S.C. § 1343 (Count II),[2] and

---

* Honorable Howard T. Markey, Chief Judge for the Federal Circuit, sitting by designation.

1. 18 U.S.C. § 371 provides:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 1343 provides:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be

interstate travel with intent to promote an unlawful activity in violation of 18 U.S.C. § 1952 (Count V).[3] We *affirm*.

### Background

In 1975, at Calder Race Track in Miami, one Griffin[4] and his partners Davanzo and Accetturo paid Ostrander and Brown to drug horses. Griffin paid Gerillo to locate the stables occupied by the horses to be drugged. To provide Gerillo access to the track's restricted area, Griffin and Davanzo obtained a job for Gerillo as a salesman of equestrian products.

Griffin provided Brown and Ostrander with bottles of the drug he concocted, a list of horses to be drugged, and their stall numbers. Brown and Ostrander put the drug into the horses' water buckets. Ewart, a horse owner, trainer, and co-defendant, drugged his own horse for certain races. Griffin, Davanzo, and Accetturo placed bets on the controlled races and shared the profits.

Toward the end of the summer 1975 racing season, owners and trainers began to suspect that races were being manipulated. Mary Santos, Gerillo's employer, began receiving complaints about the time Gerillo was spending back of the track. Gerillo was found and ejected by a trainer from the stall occupied by the trainer's horse. Security measures having been tightened, Griffin decided that the scheme could no longer be safely carried out at Calder.

Griffin, Davanzo, and Accetturo sent Brown and Ostrander, with a supply of the drug prepared by Griffin, and later sent two horses, to Keystone Race Track outside of Philadelphia, Pennsylvania. At Keystone, Gerillo obtained a vender's license giving access to the back of the track. During the next week, Ostrander daily telephoned Griffin in Miami to advise him of their progress. At the end of the week, Ostrander informed Griffin that because of tight security the scheme would not work. Griffin sent Davanzo to Keystone to review the situation. After investigating, Davanzo agreed that the scheme would not work at Keystone and it was abandoned.

In December 1977, Ostrander told federal authorities about the scheme. After an investigation, Ostrander actively cooperated with federal authorities. Wearing an electronic tape recording device, he engaged Davanzo, Brown, and Gerillo in detailed conversations about the race fixing scheme and their activities related to it.

Co-defendant Ewart was convicted on Count I. Co-indictee Accetturo was found mentally incompetent to stand trial.[5]

### Issues

1. Whether the tape recordings were properly admitted into evidence.

2. Whether the evidence was sufficient to support the verdicts.

3. Whether the trial judge properly instructed the jury respecting the acquittal on Counts III and IV.

---

transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

3. 18 U.S.C. § 1952 provides:
   (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
        *     *     *     *     *     *
   (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
   (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling. . . .

4. Griffin was separately tried and convicted.

5. At the close of the government's case, the district court granted appellants' motion for judgments of acquittal on charges of influencing and attempting to influence a sporting contest by bribery in violation of 18 U.S.C. § 224 (Counts III and IV).

4. Whether the trial judge properly denied appellants' motion to sever when Ewart chose to testify.

## OPINION

### 1. Admissibility of Tapes

■ Appellants first argue that the warrantless taping violated the Fourth Amendment's proscription against unreasonable searches and seizures. Appellants concede, as they must, that the applicable authorities support the trial judge's refusal to suppress the tapes. *United States v. Henry,* 447 U.S. 264, 272, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115 (1980); *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). Appellants attempt to distinguish those cases as involving ongoing investigations, not, as in this case, investigations occurring years after the conspiracy ended. Nothing in those cases, however, purports to so limit them. Indeed, in *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), an indictment was brought eighteen months, though based on information available one month, after commission of the crime. During the interim, the government conducted an investigation in hopes of discovering other participants. The Court sanctioned the delay and investigation, placing no limitations on investigative techniques merely because the investigation was carried out after commission of the crime and after probable cause was established. The trial judge properly admitted the tapes into evidence over this objection in this case.

■ Employing a hypothetical, appellants next say the government would have needed a warrant if it had sought to place a listening device in Davanzo's restaurant, and it should be so bound when using Ostrander to gather evidence it could not have gathered directly. There is no Fourth Amendment violation here, however, because Ostrander, a paid informer and not a law enforcement agent of the government, gave his consent before recording each of the conversations, thereby freeing the conversations from the warrant requirement. 18 U.S.C. § 2511(2)(c); *United States v. Caceres,* 440 U.S. 741, 750, 99 S.Ct. 1465, 1470 (1979); *United States v. Congote,* 656 F.2d 971, 976 (5th Cir.1981). As part of the same argument, appellants say the government's action transformed Ostrander into a surreptitious eavesdropper, in violation of the Fourth Amendment and the due process clause of the Fifth Amendment. However, the statements having been made directly to Ostrander, he cannot be considered an eavesdropper,[6] and the Fifth Amendment does not prohibit the playing of recorded statements to the jury merely because the government delayed arrest while it secured self-incriminating statements. *Koran v. United States,* 469 F.2d 1071 (5th Cir.1972).

■ Appellants' contention that a co-conspirator's post-conspiracy statements implicating other conspirators are hearsay and thus inadmissible is simply inapplicable here, where the government edited from each tape and its transcript all references to any defendant other than the defendant-party to the conversation against whom it was offered. Similarly, appellants' reliance on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is misplaced, for here the editing of the tapes avoided a prejudicial "spill over". Avoidance of prejudice was further assured when Judge Davis instructed the jury on two occasions that each defendant's taped conversation could be viewed as evidence against that defendant alone and not against other defendants.

■ Lastly, appellants say the tapes were inadmissible because the government failed to provide corroborative evidence of the essential elements of the charges. It is well settled, however, that there need not be corroborative evidence proving every element of the offense before an admission

---

**6.** *State v. Sarmiento,* 397 So.2d 643 (Fla.1981) is not controlling because appellants were convicted under federal law and not state law. That a state may provide greater rights under state law does not affect their rights under federal law. *United States v. Horton,* 601 F.2d 319 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979).

can be received in evidence. All that is necessary is for "the government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954). The testimony of Ostrander, Santos, Potenza, Gory, Cardinale, and racetrack officials, along with a number of documents, constituted independent evidence sufficient to permit the introduction of the tape recorded conversations.

2. Sufficiency of Evidence

█ The conspirators employed a euphemism, "equipment", in discussing what Ostrander and Brown were to put in the selected horses' water buckets. Appellants now assert an absence of proof that the "equipment" was a drug. The testimony of Ostrander that he had seen the "equipment" work, the taped conversational admissions of each defendant, and the evidence that horses that received "equipment" were adversely affected, constituted proof fully adequate to support the verdict of the jury. Considering as we must that evidence in a light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we conclude that there was sufficient evidence to support the conviction of conspiracy.

█ Appellants' contention that the conspiracy conviction can not stand in light of insufficient evidence to support the substantive charges of wire fraud and interstate travel is without merit. The crime of conspiracy is a separate and distinct offense, conviction on which is independent of the outcome of trial on substantive charges properly brought.[7] *United States v. Feola,* 420 U.S. 671, 694, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541 (1975); *United States v. Ocanas,* 628 F.2d 353, 361 (5th Cir.1980).

█ Appellants argue for reversal of their convictions for wire fraud on the premise that the telephone calls were made

to terminate the conspiracy, not in furtherance thereof. However, 18 U.S.C. § 1343, *supra* note 2, does not require actual furtherance but only an intention that the communication help further the scheme. *United States v. Hammond,* 598 F.2d 1008, 1010 (5th Cir.1979). That intention was proven here. That the telephoned discussions of how to make the scheme work at Keystone included opinions on feasibility in view of tight security is not controlling. It was only after daily calls over a week's time, a visit by Davanzo, and further discussions, that the plan was ultimately abandoned. Because phone calls were intended to further the scheme, the wire fraud convictions must stand.

█ Concerning sufficiency of evidence on convictions for interstate travel, appellants say no illegal acts were committed in Pennsylvania. Again, 18 U.S.C. § 1952, *supra* note 3, does not require commission of an illegal act in the destination state:

Case law defining the requisite "thereafter" acts is in disarray. However, the courts have apparently reasoned that the facilitating act in the other state need not be unlawful itself. As long as the interstate travel or use of the interstate facilities and subsequent facilitating act make the unlawful activity easier, the jurisdictional requisites under § 1952 are complete.... Thus, we do not accept the appellant's contention that the subsequent facilitating conduct must be illegal, much less illegal in the state of destination. *United States v. Jones,* 642 F.2d 909, 913 (5th Cir.1981).

In sum, we conclude that there was sufficient evidence to support all of the convictions of all appellants.

3. Instructions on Acquittal

The bulk of the evidence related to the scheme to drug horses at Calder. Appellants say the evidence was related to bribery Counts III and IV on which they were acquitted, and that the jury must have been

---

7. *United States v. Irwin,* 654 F.2d 671 (10th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982), is distinguishable because the substantive counts in the present case do not fail to state a crime.

confused because it was not instructed to disregard the evidence. The contention is unavailing in view of the clear relevance of the evidence to the charges under Counts I, II, and V on which appellants were tried. *United States v. McLennan,* 563 F.2d 943, 949 (9th Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).

Nonetheless, Judge Davis agreed, after counsel for Gerillo and Brown expressed concern, to tell the jury that certain parts of the indictment had been deleted:

> First of all the indictment that was read to you contained five counts by Mr. Lehner early in this trial. I think he read the indictment to you. I am asking you to consider only three counts in this trial. And that is why some matters that you might have wondered about will not be argued by counsel.

> We have revised the indictment itself so it will reflect the three counts that we have asked you to consider and you will get a copy of that revised indictment when you commence your deliberations.

Having had an opportunity to discuss the matter with the court, trial counsel did not object to the instructions as proposed or as given. Appellants will not, therefore, be heard on appeal to complain about sufficiency of those instructions. *Id.* at 951.

4. Severance

At close of the government's case, appellants' motion for severance under Fed. R.Crim.P. 14,[8] on the ground that co-defendant Ewart's decision to testify prejudiced them, was denied. The denial must be affirmed unless it constituted an abuse of discretion. *United States v. Bright,* 630 F.2d 804, 813 (5th Cir.1980). "The appellant has a heavy burden in demonstrating prejudice when a severance is not granted ... and the ruling of the trial court will rarely be disturbed on review." *United States v.*

*Crockett,* 514 F.2d 64, 70 (5th Cir.1975). Appellants' sole complaint is that Ewart's testimony was "unbelievable". Ewart, however, did nothing more than deny his involvement, and made no incriminating statements about any of the appellants. Under those circumstances, denial of the motion to sever was in no manner an abuse of discretion.

*Conclusion*

No error occurred in admitting the tapes into evidence, in instructing the jury respecting the deleted counts, or in denying the motion to sever. The evidence was sufficient to support the verdicts.

The convictions are AFFIRMED.

---

**8.** Rule 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.