UNITED STATES of America, Plaintiff,

v.

Ira SEINFELD, Defendant.

No. 85–CR–753.

United States District Court,
E.D. New York.

April 15, 1986.

U.S. Atty., E.D. of N.Y., Brooklyn, N.Y. by John Gleeson, for plaintiff.

Sercarz, Schechter & Lopez, Brooklyn, N.Y. by Maurice H. Sercarz, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Defendant is charged in a five-count indictment with knowing and unlawful possession of firearms (26 U.S.C. §§ 5845(a), 5845(b), 5861(d), 5871), possession of a firearm from which the serial number had been removed (26 U.S.C. § 5861(h)) and the unlawful manufacture of silencers (26 U.S.C. §§ 5845(a), 5845(b), 5861(f), 5871). He has moved to suppress the firearms, silencers, gun parts and ammunition seized from his apartment and garage pursuant to search warrants. The search warrants were predicated on information that the defendant had revealed to a government agent; the government agent had answered the telephone during the execution of a search warrant at the place of business of a seller of silencer kits.

Presented is the question of whether the conduct of the government agent answering the telephone violated defendant's constitutional rights. As indicated below, his rights were not violated.

## FACTS

Members of the Tucson police department and special agents of the Bureau of Alcohol, Tobacco and Firearms executed a search warrant at the residence of one Al Waddell in Tucson, Arizona. Waddell, doing business as "Sionacs" from his home, was selling kits to manufacture gun silencers. Seized under the warrant were a number of these kits and documents. During the course of the search Waddell's incoming telephone calls were answered by a member of the Tucson police department posing as an employee of Sionacs. Twelve calls, each placing orders for silencer kits, were received.

One call was from an individual identifying himself as Ira Seinfeld. It is not dis-

puted that the caller was the present defendant. Defendant believed that he was talking to an employee of Sionacs. He asked that Mr. Waddell be informed that the two .22 caliber silencer kits he had previously purchased worked well.

Based upon the information obtained during this phone conversation, federal agents procured a search warrant for defendant's residence in this district. Upon executing the warrant, the federal agents discovered a large quantity of illegal firearms and firearm components. Included among the items seized were a fully loaded Uzi semi-automatic carbine, conversion kits to modify Uzi semi-automatic carbines to fire automatically, empty boxes in which Uzi carbines had been sold, instructional material relating to the manufacture of firearms and documents indicating that additional firearms could be found at the defendant's garage. Based upon this information a search warrant was obtained for the garage and another large quantity of firearms, silencers, firearm parts and ammunition was found.

## LAW

■ A police officer on the premises of an illegal business pursuant to a search warrant may answer the telephone. *See United States v. DeLutis*, 722 F.2d 902, 909 (1st Cir.1983); *United States v. Vadino*, 680 F.2d 1329, 1335 (11th Cir.1982), *cert. denied sub. nom. Natale v. United States*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Gallo*, 659 F.2d 110, 113–15 (9th Cir.1981); *United States v. Campagnuolo*, 592 F.2d 852, 861–64 (5th Cir.1979); *United States v. Fuller*, 441 F.2d 755, 760 (4th Cir.), *cert. denied*, 404 U.S. 830, 92 S.Ct. 73, 30 L.Ed.2d 59 (1971).

Two rationales support this result. First, when the telephone calls are related to the purpose of the search the calls fall within the general language in a warrant regarding evidence of the crime and thus may be "seized." *See, e.g., United States v. Fuller*, 441 F.2d 755, 760 (4th Cir.), *cert. denied*, 404 U.S. 830, 92 S.Ct. 73, 30

L.Ed.2d 59 (1971); *United States v. Kane*, 450 F.2d 77, 84–85 (5th Cir.1971). Illegal bookmaking and gambling activities are generally involved and the warrant authorizes the seizure of "wagering paraphernalia"—arguably a category encompassing oral wagers. In the present case no such catchall phrase was present in the Tucson warrant.

A second theory supporting authority to answer telephones is that the calls are reasonably related to the purpose of the search so that there need not be explicit authority in the warrant for the "seizing" of the calls. *See, e.g., United States v. Ordonez*, 722 F.2d 530, 542 (9th Cir.1983), *mod. on other grounds*, 737 F.2d 793 (9th Cir.1984). That is to say, if the telephone is necessary for the illicit business being conducted on the premises, and the agents are there lawfully, they may answer the phone.

■ We can assume on this record that it was necessary for Sionacs, in Arizona, to use the telephone in selling silencer component parts to purchasers in New York. Selling illegal gun components is analogous to selling illegal drugs—a business in which oral rather than written purchase orders are relied upon. *See, e.g., United States v. Ordonez*, 737 F.2d 793, 810 (9th Cir.1984) (telephone is necessarily related to the business of selling illegal drugs from home).

■ The Tucson officer who answered the phone took twelve calls and all related to the buying of silencer component parts. This is sufficient evidence that Waddell used the telephone in conducting his illegal business. *Cf. United States v. Congote*, 656 F.2d 971, 974 n. 5 (5th Cir.1981) (where only one call answered was related to cocaine and the rest were personal calls, the phone did not play an integral role in the crimes under investigation); *United States v. Kane*, 450 F.2d 77, 85 (5th Cir.1971) (standard of reasonableness would be transgressed if a number of calls were innocent).

Defendant's own affidavit states that he believed he was calling the office of Sionacs. There is also some evidence, which the defendant does not dispute, that the defendant had made a number of previous calls to Waddell's home, all of which were related to the purchase of silencer kits. It seems clear that the telephone was a necessary part of Waddell's business and that the defendant was making a commercial, not a personal, call. It was reasonable for the agents to believe that the incoming calls would be related to the purpose of their search. The Tucson agents therefore acted within the scope of the warrant when they answered the telephone.

Unlike the cases cited above, here the information and evidence gathered by answering the telephone is being used against the person who placed the call, and not the possessor of the telephone, the intended recipent of the call. One court approving use against the telephone's possessor has relied upon the fact that the officer "had probable cause to believe that other evidence ... could be obtained by answering a ringing telephone in premises that had already yielded warrant-authorized evidence ...." *United States v. Kane*, 450 F.2d 77, 85 (5th Cir.1971). "Probable cause" in this context is cause to believe that the evidence sought [would] aid in a particular apprehension or conviction." *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967). *Cf. United States v. Zenni*, 492 F.Supp. 464, 469 (E.D.Ky.1980) (utterances of the bettors "telephoning in their bets were nonassertive verbal conduct, offered as relevant [against the person whose premises were being searched] for an implied assertion to be inferred from them, namely that bets could be placed at the premises being telephoned").

■ *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) does not apply because defendant was not in custody or charged when he called. *See, e.g., Oregon v. Elstad*, 470 U.S. 298, ——, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985). Although admissions obtained through trickery or deceit are deemed involuntary, and cannot be used against the defendant, *see, e.g., Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), misrepresentations of identity of a policeman acting under cover are not such trickery. *See United States v. Little*, 753 F.2d 1420, 1438 (9th Cir.1984) (imposing affirmative duty on federal agents to identify themselves whenever questioned would effectively end all federal undercover operations).

■ Undercover operations have long been sanctioned by the courts. *See, e.g., United States v. Walker*, 760 F.2d 144, 146–47 (7th Cir.1985); *United States v. Reynolds*, 762 F.2d 489, 491–93 (6th Cir. 1985) (incriminating statements made to undercover agents did not involve compulsory self-incrimination in violation of the Fifth Amendment). The government has even gone so far as to set up "shop" to ensnare criminals. The most famous of such cases is the Abscam operation, in which the government created a fictitious Middle East corporation to uncover political corruption. *See* G. Caplan, *Abscam Ethics* (1983); Gershman, *Abscam, the Judiciary and the Ethics of Entrapment*, 91 Yale L.J. 1565 (1982). Establishment of such firms has been consistently upheld by the courts.

Subject to the defense of entrapment, the government could set up a fictitious firm, as it did in the Abscam operation, in order to sell illegal firearms to defendant. If defendant had called such a fictitious firm in order to purchase guns and if the government procured a warrant and searched his premises based on that phone call, any evidence so seized would be admissible against him. *A fortiori*, the relatively minor trickery by the Tucson policeman posing as an employee of Sionacs does not create a constitutional impediment to use of defendant's voluntary statements as a basis for a search warrant.

■ Defendant's claim that the agent's answering of Waddell's telephone during

the execution of a search warrant violated his rights under the Fourth Amendment is also without merit. Some telephone conversations are protected by the Fourth Amendment. *See Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The person relying on this protection must show a legitimate expectation of privacy in the telephone call. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). There is a lesser expectation of privacy in a business as compared to a home.

> The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home ....

*Donovan v. Dewey,* 452 U.S. 594, 598, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981). There may be occasions when a caller to a business phone has an expectation of privacy, but this is not one of them.

Even less expectation of privacy exists in the premises of an illegal business. *Cf. United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) ("Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police."); *United States v. Napolitano,* 552 F.Supp. 465, 483 (S.D.N.Y.1982) (defendant has "no justifiable expectation "that confidence regarding criminal activities will be kept").

Although the telephone in question was located in the home of Waddell, the defendant believed that he was calling the firm of Sionacs. Defendant did not have a privacy interest in Waddell's apartment or telephone. *See United States v. Congote,* 656 F.2d 971 (5th Cir.1981). He did not terminate the call when informed that Waddell could not come to the telephone. After being informed that he was speaking to an employee of Waddell, defendant spoke freely and without hesitation. It seems clear that defendant intended to make a business call and not a personal call. Obviously he wanted to keep his conversations about his illegal business secret, but he had no justifiable expectation of constitutionally protected privacy.

*United States v. Congote,* 656 F.2d 971 (5th Cir.1981), a case quite similar to the one now before the court, held that a defendant has no legitimate right of privacy in either the apartment in which he had no interest or in a phone call to that apartment. The Fifth Circuit refused to suppress evidence obtained from the call, even though it held that the underlying search of the premises, the arrest of the occupants of the premises, and the actions of the officers in answering the phone call were all illegal since they had no search warrant.

In the case at hand neither the government nor the defendant is questioning the validity of the Tucson warrant. Defendant, as did Congote, instituted the calls and spoke freely with the agents.

Defendant's attempt to distinguish *Congote* on the ground that he "manifested his subjective expectation of privacy by seeking to ascertain the person with whom he was speaking" is unpersuasive. The agents in this case and in *Congote* did not impersonate the intended recipient of the call; instead they pretended to be the recipient's agent. Both Seinfeld and Congote spoke freely to someone they had never met before. The expectation that the stranger with whom a criminal is conversing about illegal activities is not a government agent does not convey standing to raise a Fourth Amendment claim.

## CONCLUSION

Defendant's motion to suppress is denied.

So ordered.