[No. 31784-9-I.    Division One.    August 14, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. HECTOR JOSE GONZALES, *Appellant*.

*Donna R. McNamara*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Terri R. Luken, Deputy*, for respondent.

COLEMAN, J. — Hector Gonzales asks this court to decide whether article I, section 7 of the state constitution is violated when a police officer answers the telephone at a residence while executing a search warrant on the premises. We find that the constitution is not violated in these circumstances. We also find that the State presented sufficient evidence to support Gonzales's convictions and that the school zone sentencing enhancement was properly applied. Accordingly, we affirm.

In the spring of 1992, King County police officers conducted surveillance of several vehicles and homes in connection with a narcotics investigation. On May 6, the officers observed Gonzales drive a Ford Astro van from his apartment, one of the homes under surveillance, to a nearby McDonald's restaurant. After his passengers had entered the restaurant, Gonzales stood by the side of the road and flagged down a blue van. He got in the van and spoke to the driver. Gonzales returned to the Ford Astro and moved the front seat forward to retrieve an item, which he placed in his clothing. He retraced his steps to the blue van and sat in the passenger seat, where he appeared to be counting something. He then collected his passengers and drove the Ford Astro to 2208 South Hinds Street, another home under surveillance. Gonzales often visited this location; he was videotaped arriving at the South Hinds Street house three times on May 9 and 10.

On May 11, the officers saw Gonzales drive a different vehicle, a Ford Fairmont, from the direction of the house on South Hinds Street to his apartment complex, where he parked it. Later that day, a different resident of the apartment complex, Elias Jauregui, whose apartment was also under surveillance, was seen driving the Ford Fairmont away from the complex and toward the South Hinds Street house. He drove around the neighborhood a while and then stopped to talk to three men in a black LTD, which was being watched. The owner of the South Hinds Street house, Joe Torres, was driving the LTD with Gonzales and another person as passengers. After a brief conversation with the men in the LTD, the Ford Fairmont circled the block twice and returned to the South Hinds Street house. A brown Nissan pickup arrived and parked with its truck bed facing the trunk of the Fairmont. The driver of the Nissan removed the spare tire from his truck and rolled it to the Fairmont. Jauregui placed the tire in the trunk and moved the Fairmont to a spot a few blocks away. The driver of the Nissan picked up Jauregui, and they drove off, leaving the Fairmont. After obtaining a search warrant, the police found two kilograms of cocaine with an estimated street value of $200,000 hidden in the spare tire that had been transferred to the Fairmont's trunk.

The officers theorized that several persons, including Torres, Jauregui, and Gonzales, were directing a drug operation from the South Hinds Street house in which cocaine was stored and transported in seventeen vehicles associated with the homes being watched. Some of the cars and trucks were frequently left in front of the South Hinds Street house while others were regularly parked in isolated and inconspicuous locations in the neighborhood around the house and Gonzales and Jauregui's apartment complex. At times, the officers followed the vehicles as they were driven from the watched homes to the designated parking spots. After the Fairmont was seized, the selected parking locations for the courier vehicles were changed.

During their surveillance of the South Hinds Street house, the officers observed Jauregui remove something from the trunk of a Dodge Dart on several occasions. On one occasion, on May 19, an officer observed Jauregui standing outside the house with two other men. Jauregui left the group and walked to the Dodge Dart. He opened the trunk halfway, retrieved something from up under the lid, and placed the item in his shirt pocket. Soon after, Gonzales arrived in the Ford Astro. Gonzales and Jauregui talked and joined the others. The officer saw the four men shaking hands in a way that suggested that they were passing something between them. Jauregui then made another trip to the Dodge Dart's trunk and Gonzales left.

On May 28, the officers executed several search warrants in connection with this investigation. They found half a kilogram of cocaine in a Ford truck parked at the South Hinds Street house and another substantial amount in the Dodge Dart. A search of the Ford Astro and Gonzales's apartment did not yield any cocaine, but the officers found substantial sums of money: $425 in the Ford Astro, $1,373 on Gonzales, and $880 in his bedroom.

While searching Gonzales's apartment, the officers answered two or three telephone calls from officers conducting searches in other locations. Expecting another call from a fellow officer, Detective Gaddy answered a call for Gonzales. The caller, who was later identified as James Holstine, stated that Gonzales was late in delivering an ounce of cocaine to him. Detective Gaddy told Holstine that Gonzales's cousin would deliver the cocaine because Gonzales was busy. The officers coordinated a reverse sting in which they sold cocaine to Holstine and then arrested him.

Gonzales was charged, along with Jauregui, Torres, Jaime Gomez, and Elias Manzur, with one count of conspiracy to possess cocaine with intent to deliver and one

count of possession with intent to deliver on May 11.[1] The second count contained a special school zone allegation under RCW 69.50.435(a). The parties stipulated that the house at 2208 South Hinds Street was located within a school zone but that the spot where the Ford Fairmont was seized was not.

Gonzales moved to suppress the content of the telephone call between Detective Gaddy and Holstine and any resulting evidence, arguing that the detective had intercepted a telephone communication without authorization contrary to RCW 9.73 and had violated his right to privacy under the Fourth Amendment and article I, section 7 of the state constitution. The trial court denied the motion, finding that (1) RCW 9.73 did not apply, (2) drug transactions do not constitute private affairs under article I, section 7 and therefore receive no constitutional protection, and (3) the plain view exception to the warrant requirement applied.

At trial, Holstine testified that he had purchased cocaine several times from his coworker Gonzales, twice at work and once at a McDonald's restaurant in Redmond. He further testified that he had just paid off his latest $1,000 purchase when he called Gonzales on May 28 to obtain more cocaine. In response to Holstine's request, Gonzales replied, "Maybe," and arranged for Holstine to call back when he arrived in Seattle. Holstine called Gonzales as arranged, learned that a relative would deliver the cocaine, and was subsequently arrested.

Detective Turney-Loos testified that it is unusual for people who traffic in controlled substances to discuss or conduct drug sales in front of persons who are not involved in the transaction. He further testified that individuals who deal large amounts of illegal substances typically do not keep them on their person or in their homes. The prosecution argued that the activity observed during surveillance of the properties and vehicles demonstrated an

---

[1]Gonzales was not tried with his alleged coconspirators. Jauregui and Manzur pled guilty prior to trial, Gomez was a fugitive with an outstanding arrest warrant, and Torres's motion to sever the trial was granted.

agreement among the five men to possess cocaine by way of a network of vehicles. On the second count, possession with intent to deliver cocaine on May 11, the prosecution proceeded against Gonzales on a theory of accomplice liability.

The jury found Gonzales guilty on both counts and returned a special finding that Gonzales had been within a school zone at the time the crime charged in count 2 was committed. Gonzales received a standard range sentence for count 1. The standard range for the second count was twenty-one to twenty-seven months without the school zone enhancement. With the enhancement, the standard range increased to forty-five to fifty-one months. Finding that the sentencing enhancement applied, the trial court imposed forty-eight months for count 2.

We first address Gonzales's argument that the trial court erred in denying his motion to suppress the substance of the telephone conversation and any subsequent evidence. Gonzales first argues that this evidence was gained in violation of the state privacy act, RCW 9.73. The act allows police to "intercept" or "record" any private telephone communication "by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated" only when judicial authorization or the consent of all the participants in the communication has first been obtained. RCW 9.73.030(1)(a), .040. Gonzales contends that Detective Gaddy used the telephone, without proper authorization, as a device to intercept a private communication from Holstine. We do not agree.

■ In *State v. Bonilla*, 23 Wn. App. 869, 871-73, 598 P.2d 783 (1979), the court of appeals found that an officer did not "intercept" a communication or use a "device" when he listened to a telephone conversation on an extension line with the consent of one of the parties to the communication. In addition, our supreme court recently held that tilting a telephone receiver to allow an officer to hear the information does not constitute the use of a "device"

to "intercept" a communication. *State v. Corliss*, 123 Wn.2d 656, 662, 870 P.2d 317 (1994). In *Corliss*, the court stated that the officers "simply listened, in person, to what they could hear emanating from the telephone. Because there was no *device* used to record or transmit the conversation, we conclude that by the plain language of the statute, it is not applicable under the facts in this case." *Corliss*, 123 Wn.2d at 662. As in those cases, the detective in the present case did not use a device or intercept a communication within the meaning of the statute. Therefore, the trial court properly concluded that the Act does not apply here.

Gonzales next argues that the detective violated the right to privacy guaranteed by article I, section 7 of the Washington Constitution by answering the telephone. This appears to be an issue of first impression in this state. Gonzales does not ask this court to review the privacy issue under the Fourth Amendment, apparently conceding that the detective's conduct does not violate the federal constitution. Every federal and state court that has addressed similar facts has concluded that the Fourth Amendment, and in some cases the respective state constitutional provision as well, is not violated when police answer the telephone in a defendant's home while conducting a search of those premises pursuant to a search warrant. *See, e.g., United States v. Ordonez*, 737 F.2d 793, 810 (9th Cir. 1983); *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.), *cert. denied*, 469 U.S. 1034 (1984); *United States v. Gallo*, 659 F.2d 110, 114 (9th Cir. 1981); *United States v. Mosko*, 654 F. Supp. 402, 415 (D. Colo. 1987), *aff'd on other grounds sub. nom. United States v. Pinelli*, 890 F.2d 1461 (10th Cir. 1989); *United States v. Seinfeld*, 632 F. Supp. 622, 624-26 (S.D.N.Y. 1986); *Best v. State*, 71 Md. App. 422, 426-27, 526 A.2d 75, *review denied*, 532 A.2d 167 (Md. 1987), *cert. denied*, 485 U.S. 978 (1988); *Commonwealth v. Lucchese*, 233 Pa. Super. 273, 280, 335 A.2d 508 (1975).

This conclusion has been reached by different analytical

paths. Some courts have inquired whether the act of answering the telephone exceeds the scope of the search warrant. *See, e.g., Ordonez*, 737 F.2d at 810 (answering phone reasonably related to scope of search in narcotics investigation); *Gallo*, 659 F.2d at .114 (reasonably related to purposes of search because telephone highly necessary accessory to bookmaking); *United States v. Kane*, 450 F.2d 77, 85 (5th Cir. 1971) (evidence not described in valid search warrant but having nexus with crime under investigation may be seized during search), *cert. denied*, 405 U.S. 934 (1972); *United States v. Fuller*, 441 F.2d 755, 760 (4th Cir.) (within scope of search warrant regarding suspected booking operation), *cert. denied*, 404 U.S. 830 (1971); *People v. Sandoval*, 65 Cal. 2d 303, 306-08, 419 P.2d 187, 54 Cal. Rptr. 123 (1966) (part of lawful search in narcotics investigation), *cert. denied*, 386 U.S. 948 (1967). This approach proceeds on the assumption that a constitutional right to privacy attaches to an incoming telephone call and police must therefore be authorized, either explicitly or implicitly, by warrant to answer it.

Other courts have evaluated whether the caller or intended recipient has a legitimate expectation of privacy in the telephone call. *See, e.g., United States v. Passarella*, 788 F.2d 377, 379-81 (6th Cir. 1986) (defendant who did not participate in the conversation had no expectation of privacy in words of another during phone conversation with agents legitimately on premises pursuant to arrest warrant); *Gann*, 732 F.2d at 723 (defendant had no reasonable expectation of privacy in telephone conversation overheard by detective lawfully on premises pursuant to search warrant because detective was entitled to gather any incriminating evidence which he was capable of perceiving through any of his senses); *United States v. Vadino*, 680 F.2d 1329, 1335 (11th Cir. 1982) (defendant with no dominion or control over premises and not a party to conversation had no privacy interest), *cert. denied*, 460 U.S. 1082 (1983); *United States v. Congote*, 656 F.2d 971, 975-76 (5th Cir. 1981) (caller lacked standing to assert absence of search warrant because he had no legitimate

right of privacy in apartment in which he had no interest or in phone call to that apartment); *Seinfeld*, 632 F. Supp. at 626 (caller had no justifiable expectation of privacy in apartment or telephone of person he was trying to call when police were in apartment pursuant to a search warrant investigating illegal business); *Best*, 526 A.2d at 80 (appellant lost any expectation of privacy he may have had in incoming telephone calls when the police lawfully entered his home).

Some cases have blurred the distinction between these approaches. *See Mosko*, 654 F. Supp. at 415 (citing cases representing each approach); *People v. Warner*, 270 Cal. App. 2d 900, 76 Cal. Rptr. 160, 165-67 (1969). A few cases have merely concluded that the Fourth Amendment is not violated when no wiretapping occurs. *See United States v. Anthony*, 444 F.2d 484, 488 (9th Cir. 1971) (distinguished electronic surveillance by noting that arresting officer was a party to the conversation and thus did not listen in on a conversation between others), *cert. denied*, 406 U.S. 959 (1972); *McNulty v. People*, 483 P.2d 946, 948 (Colo. 1971) (finding electronic surveillance case inapplicable and therefore no federal or state constitutional violation); *Riley v. State*, 249 A.2d 863, 865 (Del.), *cert. denied*, 395 U.S. 947 (1969).

■ Gonzales urges this court to find that he has a legitimate expectation of privacy in incoming calls under article I, section 7 of the state constitution[1] and that answering the telephone was beyond the scope of the warrant. Regarding the latter, we are persuaded by the analysis of the courts which have held that answering the telephone in similar circumstances falls within the scope of a valid search warrant. We also conclude that there is no legitimate expectation of privacy in incoming calls.[3] A reasonable homeowner would expect that persons who are

---

[1]Article I, section 7 provides that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law".

[3]Although Gonzales offers a *Gunwall* analysis, *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), arguing that prior Washington law

lawfully in the home might answer the telephone. We decline to adopt Gonzales's assertion that officers validly on the premises should be prohibited from using "any facilities or amenities in the residences they are searching." "[I]t would be unreasonable to require police officers executing a search and seizure warrant, once lawfully on the premises to be searched, to ignore the ringing of a telephone or a knock at the door." *Best*, 526 A.2d at 80. We hold that officers who are lawfully present pursuant to a valid search warrant may answer the telephone. Therefore, the detective did not violate the state constitution or act outside the scope of the warrant when he answered the telephone call from Holstine while executing the warrant on Gonzales's apartment. The trial court properly refused to suppress evidence of that conversation and related testimony.

Gonzales's judgment and sentence are affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

BECKER and ELLINGTON, JJ., concur.

Reconsideration denied September 25, 1995.

Review denied at 128 Wn.2d 1020 (1996).

---

indicates that greater protection should be afforded under our state constitution than is available under the Fourth Amendment, his approach is not convincing. He provides no authority indicating that this state has historically recognized or protected an expectation of privacy in all incoming telephone calls.